THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL RUCKER, Defendant-Appellant.

Second District   No. 2—96—0580

Opinion filed January 22, 1998.

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate Defender's Office, and Liam Dixon, of Camic, Johnson, Wilson & Bloom, P.C., both of Elgin, for appellant.

David R. Akemann, State's Attorney, of St. Charles (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

Following a jury trial, the defendant, Michael Rucker, was convicted of felony retail theft (720 ILCS 5/16A—3(a) (West 1994)), misdemeanor theft (720 ILCS 5/16—1(a)(4)(A) (West 1994)), and unlawful possession of a theft-detection shielding device (720 ILCS 5/16—15(b) (West 1994)) and sentenced to a total of six years' imprisonment. On appeal, the defendant argues that (1) the trial court erred in denying his motion to quash arrest and suppress evidence; and (2) that he was not proved guilty of the offense of retail theft beyond a reasonable doubt. We affirm.

Prior to trial, the defendant moved to quash his arrest and suppress the evidence recovered by the police. At the suppression hearing, the defendant testified that, on September 6, 1995, he and George Mitchell were at Spring Hill Mall in West Dundee. At approximately 3 p.m., the defendant and Mitchell exited the mall and got into a motor vehicle. The vehicle was driven by Derrick Pearson, and the defendant sat in the backseat. The defendant testified that there was a

Sears bag lying on the backseat next to him. The bag was closed and "wrapped up" and appeared to contain clothing. The defendant testified that the bag was not his and that he did not know what was in the bag.

As the vehicle exited the parking lot of the mall, a police car followed it for several blocks and then activated its police lights. The defendant testified that, after Pearson pulled the vehicle over, an officer approached the vehicle and said that he had stopped them because they were not wearing safety belts. When the officer then looked into the car, he observed the bag lying on the backseat. According to the defendant, the officer pulled the bag out of the car, opened it, and said, "This bag [is] lined with aluminum foil." At that time, the three men were placed under arrest.

Officer Gerald Foresman of the Carpentersville police department testified that, on September 6, 1995, he was on duty patrolling the area of Spring Hill Mall. At that time, he observed the defendant and Mitchell standing near a red Geo Tracker in the parking lot outside the mall. At that point, Officer Foresman observed that the Geo Tracker did not have a front license plate. After approximately 15 minutes, Officer Foresman observed the defendant and Mitchell exiting the mall. The defendant was carrying a J.C. Penney shopping bag. The two men got into the Geo Tracker and proceeded out of the parking lot. Officer Foresman followed the vehicle out of the lot and after several blocks effectuated a traffic stop. Officer Foresman testified that he pulled the car over because it did not have a front license plate.

After the vehicle was stopped, one of Officer Foresman's backup officers directed him to look at the bag in the backseat of the vehicle. Officer Foresman testified that the bag was the same J.C. Penney bag that he had seen the defendant carrying when he exited the mall. Officer Foresman could see in "plain view" that the inside of the bag was lined with tinfoil. He testified that the general purpose of such a lining is to evade the theft-detection devices installed by retail stores. When tagged clothing is placed into such a lined bag, a store's alarms will not sound when the person carrying the bag exits the store. Officer Foresman testified that, because possessing such a device is a criminal offense, he seized the bag and searched its contents.

Following oral argument, the trial court denied the defendant's motion to quash arrest and suppress evidence. The trial court explained its reasoning as follows:

> "The testimony I've heard so far indicates to me that there was a basis for the stop. The officer testified that another officer arrived *** on the scene, observed the bag that's been identified and admitted into evidence ***.

I'm looking at *** the statute, that particular type of device *** is one that is a laminated or coated bag or device peculiar to and designed for shielding and intended to shield merchandise from detection by an electronic or magnetic theft alarm sensor[, and possession of it] is a criminal offense.

I think, based on that testimony, the officers on that basis alone had a right to seize the bag and thereafter had a right to see what was in it besides the theft detection *** avoidance device, so, I'll deny the motion."

The cause proceeded to a jury trial on March 4, 1996. At trial, Officer Foresman testified that, on the date in question, he observed the defendant and another individual standing next to a red Geo Tracker outside of the mall. The defendant and that individual walked into the mall with a J.C. Penney bag and exited the mall 15 minutes later with what appeared to be the same bag. When the men entered the mall, the bag had appeared empty; upon their exit, the bag was full. Although the defendant was not carrying the bag when the men entered the mall, he was carrying it as they exited. While the men were in the mall, the driver of the Geo Tracker remained in the vehicle. The Geo Tracker did not have a front license plate.

After effectuating the traffic stop, Officer Foresman observed that the defendant was sitting in the backseat of the vehicle next to the J.C. Penney bag. Inside the bag, Officer Foresman found the theft-detection shielding device, five pairs of blue jeans, three T-shirts, a pair of pliers, a razor, razor blades, a straight-blade knife, and a roll of gray duct tape. On the floor of the backseat Officer Foresman also found three leather jackets. All of the leather jackets and the blue jeans were still on hangers and were tagged with theft-detection devices. Each of the jackets had a "J. Riggins" tag; each of the blue jeans had a "MGR Works" tag. No receipts for any of these items were found.

Michael Serra testified that he was a police detective employed by the Village of West Dundee. On the date in question, Detective Serra monitored a police dispatch made by Officer Foresman requesting backup. Detective Serra proceeded to the location where Officer Foresman was making the traffic stop. When he arrived at the scene, he observed that the defendant was sitting in the backseat of the vehicle. Placed on the seat next to the defendant was a J.C. Penney shopping bag; protruding out of the bag was another bag covered with duct tape. Detective Serra identified this inner bag as a theft-detection shielding device. Within this bag, they found various items of merchandise with hangers and sensors still attached.

James McFarrland testified that he was a regional manager for

J. Riggins stores. McFarrland testified that there was a J. Riggins store at Spring Hill Mall. He stated that the leather jackets found in the Geo Tracker were sold at J. Riggins stores. McFarrland was able to identify the objects by the "J. Riggins" tag on the inside of the jacket. He also noted that there were "J. Riggins" buttons on the jacket. McFarrland acknowledged that he was not at the J. Riggins store at Spring Hill Mall on the date in question.

Melissa Pearson testified that she was an employee of the Merry-Go-Round store at Spring Hill Mall. Pearson identified the T-shirts and jeans as items that were offered for sale at the store. Pearson was able to identify these items based on the "MGR Works" tags attached to the items. She did not recall whether she worked at the store on the date in question and testified that she learned of the theft by reading about it in the newspaper.

At the conclusion of the trial, the jury found the defendant guilty of felony retail theft (720 ILCS 5/16A—3(a) (West 1994)), misdemeanor theft (720 ILCS 5/16—1(a)(4)(A) (West 1994)), and unlawful possession of a theft-detection shielding device (720 ILCS 5/16—15(b) (West 1994)). Following a sentencing hearing, the trial court sentenced the defendant to a total of six years' imprisonment. The defendant filed a timely notice of appeal.

The defendant's first argument on appeal is that the trial court erred in denying his motion to quash arrest and suppress evidence. The defendant contends that the search of the J.C. Penney bag was an unreasonable search and seizure. According to the defendant, the search did not satisfy the requirements of the "plain view" doctrine as Officer Foresman did not have probable cause to stop the vehicle and because the theft-detection shielding device was not in his plain view. The defendant concludes that he was illegally stopped and searched and that the recovered evidence should have been suppressed.

■ At the outset, we note that a trial court's decision on a motion to suppress evidence will not be disturbed on review unless that decision is clearly erroneous or against the manifest weight of the evidence. *People v. Drake*, 288 Ill. App. 3d 963, 967 (1997). Our standard of review is such because the trial court is in a superior position to determine and weigh the credibility of the witnesses, to observe their demeanor, and to resolve conflicts in their testimony. *People v. Carter*, 288 Ill. App. 3d 658, 662 (1997). Thus, the trial court's factual determinations, as well as any reasonable inferences drawn therefrom, are entitled to great deference on review. *People v. Perez*, 288 Ill. App. 3d 1037, 1043 (1997).

Both the United States and the Illinois Constitutions protect

citizens from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; *People v. Fulton*, 289 Ill. App. 3d 970, 973 (1997). The fundamental purpose of these provisions is "to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings" (*People v. James*, 163 Ill. 2d 302, 311 (1994)), while according " ' "fair leeway for enforcing the law in the community's protection." [Citation.]' " *James*, 163 Ill. 2d at 311, quoting *Dunaway v. New York*, 442 U.S. 200, 208, 60 L. Ed. 2d 824, 833, 99 S. Ct. 2248, 2254 (1979). Generally, searches and seizures are only reasonable if the government has first obtained a warrant authorizing the action. *Illinois v. Rodriguez*, 497 U.S. 177, 181, 111 L. Ed. 2d 148, 156, 110 S. Ct. 2793, 2797 (1990). A warrantless search or seizure is deemed *per se* unreasonable unless it comes within one of the few specifically established and well-delineated exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 29 L. Ed. 2d 564, 576, 91 S. Ct. 2022, 2032 (1971); *Drake*, 288 Ill. App. 3d at 967.

■ One such exception is the "plain view" doctrine. In certain circumstances, without a warrant, the police may lawfully seize incriminating evidence in "plain view." *Horton v. California*, 496 U.S. 128, 133-34, 110 L. Ed. 2d 112, 120-21, 110 S. Ct. 2301, 2305-06 (1990). Under the "plain view" doctrine, three conditions must be met for such evidence to be admissible: (1) it must be shown that the police did not violate the fourth amendment in arriving at the place from which the evidence could be plainly viewed; (2) the item must be in plain view of the officer; and (3) the incriminating character of the evidence must be "immediately apparent." *Horton*, 496 U.S. at 136, 110 L. Ed. 2d at 123, 110 S. Ct. at 2308. The "plain view" doctrine applies only when the evidence seized is incident to the arrest or is contraband. *People v. Eastin*, 8 Ill. App. 3d 512, 520 (1972).

The defendant argues that the State has failed to demonstrate that the police lawfully stopped the vehicle in which he was riding. The defendant argues that Officer Foresman used the traffic stop as a "ruse" to search the vehicle. In support of his contentions, the defendant notes that Officer Foresman waited to ticket the vehicle until after the defendant departed from the mall, even though the vehicle's driver had remained in the vehicle the entire time the defendant was gone. The defendant also points out that numerous individuals assisted Officer Foresman in performing the stop, including two other police officers, a police detective, the chief of police, and the captain of the police department.

The State responds that the vehicle was lawfully stopped due to a violation of the Illinois Vehicle Code: failure to display a front license plate. 625 ILCS 5/3—413(a) (West 1994). The State argues that, after

this lawful stop, the theft-detection prevention device was in "plain view," giving the police probable cause to search the contents of the bag and the car.

. In *Whren v. United States*, 517 U.S. 806, 135 L. Ed. 2d 89, 116 S. Ct. 1769 (1996), the United States Supreme Court held that "plain view" evidence is properly seized during a traffic stop provided that there is probable cause to believe that a traffic violation has occurred. In that case, plainclothes policemen patrolling a "high drug area" in an unmarked vehicle observed a truck with temporary license plates waiting at a stop sign for an unusually long time. Suddenly, the truck sped off at an "unreasonable" speed. *Whren*, 517 U.S. at 808-09, 135 L. Ed. 2d at 94-95, 116 S. Ct. at 1772. The officers stopped the vehicle, assertedly to warn the driver about traffic violations. Upon approaching the truck, the officers observed plastic bags of cocaine in the driver's hands. *Whren*, 517 U.S. at 808-09, 135 L. Ed. 2d at 94-95, 116 S. Ct. at 1772. The driver sought the suppression of the evidence, arguing that the officers used the alleged traffic violation as a pretext to stop the truck to look for drug evidence. *Whren*, 517 U.S. at 809, 135 L. Ed. 2d at 95, 116 S. Ct. at 1772.

In upholding the legality of the seizure, the Court held that the temporary stop of a motorist upon probable cause of a traffic violation does not violate the fourth amendment, even where a reasonable officer would not have stopped the motorist absent some other law enforcement objective. *Whren*, 517 U.S. at 812-13, 135 L. Ed. 2d at 97-99, 116 S. Ct. at 1774-75. The Court noted that an officer's subjective intentions in stopping a vehicle play no role in probable cause fourth amendment analysis. *Whren*, 517 U.S. at 813, 135 L. Ed. 2d at 98, 116 S. Ct. at 1774.

Similarly, this court has also held that a traffic stop provides a reasonable, articulable suspicion of criminal activity so as to lawfully permit an officer to approach a vehicle for purposes of the "plain view" doctrine. *People v. Chatmon*, 236 Ill. App. 3d 913, 924-25 (1992). In *Chatmon*, the officer observed in plain view a partially burned cannabis cigarette after approaching a vehicle that was improperly stopped upon the highway. *Chatmon*, 236 Ill. App. 3d at 925. We held that the officer's conduct in approaching the vehicle was within constitutional grounds because the officer believed that the driver was committing a traffic offense. *Chatmon*, 236 Ill. App. 3d at 925. We also held that, after the officer observed the marijuana in plain view, he had probable cause to search the vehicle. *Chatmon*, 236 Ill. App. 3d at 925.

■ In light of these authorities, we do not believe that the evidence in the instant case was obtained in violation of the fourth

amendment. Regardless of Officer Foresman's subjective intention for stopping the vehicle, the key question is whether he had a reasonable, articulable suspicion of criminal activity such that he could lawfully stop the vehicle. *Chatmon*, 236 Ill. App. 3d at 925. Here, Officer Foresman testified that he stopped the vehicle because he believed that the driver was violating section 3—413(a) of the Illinois Vehicle Code (625 ILCS 5/3—413(a) (West 1994)). Section 3—413(a) requires all drivers to display registration plates on the front and rear of their vehicles. In light of Officer Foresman's testimony that the vehicle in question lacked a front license plate, we believe that Officer Foresman did not violate the fourth amendment in arriving at the place where he discovered the evidence. See *Chatmon*, 236 Ill. App. 3d at 925.

It is also apparent from the testimony presented at the suppression hearing that the disputed evidence was in "plain view." Officer Foresman testified that he observed the J.C. Penney shopping bag lying on the backseat next to the defendant. Protruding out of the bag was a second bag lined with aluminum foil. Officer Foresman testified that, based on his experience, the purpose of such a bag was to evade theft-detection devices. As noted by the trial court, the possession of such a device is a criminal offense. See 720 ILCS 5/16—15(b) (West 1994). The incriminating character of the bag was therefore immediately apparent, thereby providing probable cause to search the bag and the vehicle for stolen property. As the circumstances presented here satisfy the prerequisites of the "plain view" doctrine, we conclude that the evidence herein was lawfully seized and that the trial court properly denied the motion to suppress.

The defendant's second argument on appeal is that he was not proved guilty of the offense of retail theft beyond a reasonable doubt. Specifically, the defendant argues that the State failed to present any direct evidence demonstrating that he knowingly took possession of or carried away any retail merchandise. The defendant points out that none of the State's witnesses actually saw him take clothing out of the J. Riggins or Merry-Go-Round stores.

■ It is not the province of this court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The relevant question is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Collins*, 106 Ill. 2d at 261, quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). The sufficiency of the evidence and the relative weight and credibility to be given the testimony of the witnesses are considerations

within the exclusive jurisdiction of the fact finder. *People v. Williams*, 93 Ill. 2d 309, 315 (1982). The evaluation of the testimony and the resolution of any conflicts or inconsistencies which may appear are also wholly within the province of the finder of fact. *Collins*, 106 Ill. 2d at 261-62.

■ In order to convict the defendant of retail theft, the State was required to prove the following elements: (1) that he knowingly took possession of, carried away, or transferred, or caused to be carried away or transferred any merchandise; (2) that the merchandise was displayed, held, stored, or offered for sale in a retail mercantile establishment; and (3) that he intended to retain such merchandise, or intended to deprive the merchant permanently of the possession, use, or benefit of such merchandise, without paying the full retail value of such merchandise. 720 ILCS 5/16A—3(a) (West 1994).

■ For purposes of retail theft, the elements of intent and unauthorized control may be proved by circumstantial evidence. *People v. Drake*, 131 Ill. App. 3d 466, 472 (1985). Based upon our review of the record, we conclude that there was sufficient circumstantial evidence introduced from which the jury could have rationally found the defendant guilty of retail theft beyond a reasonable doubt. Officer Foresman observed the defendant and Mitchell walk into the mall with an empty J.C. Penney bag; 15 minutes later, the defendant exited the mall carrying a full J.C. Penney bag. When Officer Foresman stopped the vehicle in which the defendant was riding, he observed a J.C. Penney bag lying on the seat next to the defendant with a theft-detection shielding device inside. When Officer Foresman searched the bag, he discovered the various items of merchandise detailed above. Many of these items of merchandise were still on hangers and were still tagged with theft detection tags. Two witnesses testified that some of these items were sold at the J. Riggins and Merry-Go-Round stores at Spring Hill Mall. From such evidence, the jury could rationally conclude that the defendant had carried the merchandise out of these stores with the intent to permanently deprive the merchants of the possession or use of such merchandise.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

INGLIS and RATHJE, JJ., concur.