THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. GERALD M. NADERMANN, Defendant-Appellee.

Second District   No. 2—99—0096

Opinion filed January 21, 2000.

Charles W. Roddick, State's Attorney, of Galena (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Bruce Kirkham, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE RAPP delivered the opinion of the court:

Defendant, Gerald M. Nadermann, was charged with unlawful

possession of a controlled substance (720 ILCS 570/402(c) (West 1998)) and unlawful possession of cannabis (720 ILCS 550/4(c) (West 1998)). Defendant filed a motion to suppress the evidence against him, and the trial court granted the motion. The State filed a certificate of impairment and appealed under Supreme Court Rule 604(a)(1) (145 Ill. 2d R. 604(a)(1)). The State argues that the trial court erred in granting defendant's motion to suppress because the police officers had probable cause to search the van defendant was driving. We affirm.

## I. FACTS

Evidence presented at the suppression hearing revealed the following. On August 23, 1998, defendant, who was over 21 years old, was driving a van in East Dubuque, Illinois. The van was owned by defendant's friend, Danny Birch. Another of defendant's friends, Gabino Casarrubias, who was also over 21 years old, was a passenger in the van. Around 2 a.m. on August 23, 1998, Officer Bradley Finn pulled the van over because it had neither license plates with a valid registration sticker nor a temporary registration tag. Finn asked defendant for his driver's license and told defendant that he pulled the van over because it appeared that there was no registration for the van. Defendant told Finn that there was no proof of registration because the van was just purchased the previous week. Defendant gave Finn the bill of sale for the van. Officer Steven O'Connell, who arrived at the scene sometime after Finn, testified that defendant said that the proof of registration was in the glove compartment. At that point, Finn asked defendant to exit the van, and O'Connell went to the passenger side of the van to look in the glove compartment for the vehicle registration.

While O'Connell was looking for the registration, he was also talking with Casarrubias, who was sitting in the front passenger seat. O'Connell stated that Casarrubias spoke with a Spanish accent and appeared very intoxicated. Specifically, O'Connell stated that Casarrubias smelled of alcohol, had bloodshot and watery eyes, and had slurred speech. Casarrubias denied ever speaking with O'Connell.

While O'Connell was talking with Casarrubias, Finn performed a pat down search on defendant. Finn asked defendant if he had, among other things, any guns, drugs, or ammunition in the van. Defendant told Finn that he did not. Finn also asked defendant repeatedly for consent to search the van. Defendant refused consent.

O'Connell walked back to where Finn and defendant were standing and told Finn that he failed to find any proof of registration in the van. O'Connell stated that he observed Finn asking defendant for

consent to search the van. O'Connell also stated that the more Finn spoke with defendant, the more nervous defendant appeared to get.

O'Connell then walked back to the van, walked around the vehicle, and, with the aid of a flashlight, looked inside the van's windows. While doing this, O'Connell observed a cardboard package of beer behind the driver's seat. The package had been torn open. O'Connell walked back to Finn and informed him that "there was open—not container, open cardboard wrap from the alcohol container."

Defendant testified that he had not been drinking on the night in question. He further testified that Casarrubias was not drinking in the van. Defendant denied awareness of any open alcohol in the van. Defendant also told the trial court that Casarrubias was not drinking before defendant and Casarrubias got into the van, but Casarrubias stated that he had two beers before he got into the van. Further, both defendant and Casarrubias testified that Casarrubias may have appeared tired from working all day pulling up flooring.

Even though defendant and Casarrubias testified that they had not been drinking that night, there were 12 cans of beer in the van. The 12 cans of beer had been placed in a cardboard package that was intended to hold between 16 to 18 cans of beer. Casarrubias had recently purchased the beer from a bar in Dubuque, and the bartender had placed the 12 cans in the larger cardboard package. Casarrubias testified that none of the 12 cans of beer had been opened.

Defendant further testified that Finn placed him in the squad car, and then Finn walked to the passenger's side of the van and spoke with Casarrubias. Finn stated, as O'Connell did, that Casarrubias spoke with a Spanish accent, smelled strongly of alcohol, slurred his speech, and had watery and bloodshot eyes. Casarrubias denied ever speaking with Finn. Finn then searched the van while O'Connell stood by the driver's side with a flashlight. A search warrant was never executed before the van was searched.

As Finn was exiting the van on the driver's side after completing his search, he noticed a plastic baggy in plain view. The baggy contained a green leafy substance that the officers believed was cannabis and a tannish powdery substance. The baggy was found partially stuck under the plastic shroud covering the engine. This plastic shroud was located between the driver's seat and the front passenger's seat. Both officers testified that no open cans of beer were found. Based on the evidence, defendant was charged with possession of a controlled substance and possession of cannabis. Defendant was never charged with an open container violation or any other traffic offense.

After completion of the testimony, the trial court granted defendant's motion to suppress the evidence. The trial court found

that the officers did not have probable cause to search the van because no open cans of beer were observed. Without probable cause, the officers did not have a right to be in the van, and, thus, the drugs found in plain view could not be legally seized. This timely appeal followed.

On appeal, the State argues that the torn-open cardboard package of beer found behind the driver's seat with some of the cans missing coupled with the fact that Casarrubias appeared intoxicated provided probable cause for the officers to search the van. Defendant argues that the officers searched the van merely because they had a hunch that they would find contraband.

## II. DISCUSSION

■ Both the United States and Illinois Constitutions protect every person from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. In general, a search is reasonable only if the government first obtains a search warrant. *People v. Fulton*, 289 Ill. App. 3d 970, 973 (1997). A warrantless search is deemed *per se* unreasonable unless it is falls within one of a few specifically established exceptions. *People v. Rucker*, 294 Ill. App. 3d 218, 223 (1998). One of those exceptions, the so-called "automobile exception," provides that a warrantless search of an automobile is reasonable where the police have probable cause to believe that the vehicle contains contraband. *People v. Wells*, 241 Ill. App. 3d 141, 145 (1993); *People v. Lewis*, 211 Ill. App. 3d 276, 279 (1991). This court has defined probable cause in the context of the automobile exception as knowledge of certain facts that would cause a reasonably prudent person to believe that a crime occurred and that evidence of that crime could be found in the vehicle. *People v. Scudder*, 175 Ill. App. 3d 798, 802 (1988).

A trial court's ruling on a motion to suppress is subject to a manifestly erroneous standard of review when the ruling turns upon findings of fact. *People v. Gonzalez*, 184 Ill. 2d 402, 411-12 (1998). This means that the ruling will be reversed only if we find that the trial court's factual findings were arbitrary, unreasonable, and not based on the evidence. *People v. Wells*, 182 Ill. 2d 471, 481 (1998).

Here, the trial court ruled that the officers lacked probable cause to search the van because the torn-open cardboard beer package observed behind the driver's seat was not an open container as defined in section 11—502 of the Illinois Vehicle Code (Code) (625 ILCS 5/11—502 (West 1998)). Therefore, the warrantless search of the van was unreasonable because no crime had occurred. With the exception of whether Casarrubias was intoxicated, neither the State nor defendant disputes the facts upon which the trial court relied in making its ruling. Where neither the facts nor the credibility of the witnesses is at

issue, we review *de novo* the trial court's ultimate legal conclusions; we will not reverse the trial court unless it improperly applied the accepted facts to the relevant law. *Gonzalez*, 184 Ill. 2d at 412.

■ Section 11—502 of the Code provides:

> "Transportation or possession of alcoholic liquor in a motor vehicle. (a) Except as provided in paragraph (c), no driver may transport, carry, possess or have any alcoholic liquor within the passenger area of any motor vehicle upon a highway in this State except in the original container and with the seal unbroken.
>
> (b) Except as provided in paragraph (c), no passenger may carry, possess or have any alcoholic liquor within any passenger area of any motor vehicle upon a highway in this State except in the original container and with the seal unbroken." 625 ILCS 5/11—502(a), (b) (West 1998).

■ Applying the well-known rules of statutory construction (see *People v. Robinson*, 172 Ill. 2d 452, 457 (1996)), to the circumstances of this case, we find the trial court's legal conclusion proper. The ripped cardboard package of beer is not a "container" as we interpret its use in section 11—502 of the Code. We believe the word "container" in section 11—502 means the individual item that actually contains the alcohol, such as a bottle or a can, not the outer package holding the bottles or cans. Our interpretation is supported by the statute's use of the phrase "with the seal unbroken." Packages such as cardboard boxes do not contain seals that can be broken. Bottles and cans clearly do. Moreover, prior to January 1, 1979, section 11—502 of the Code prohibited the possession of alcohol in the passenger compartment of a motor vehicle except in "the original *package*." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 95½, par. 11—502. The change from the word "package" to the word "container" indicates a clear legislative intent to narrow the scope of the statute from a prohibition against carrying open packages holding bottles or cans to a prohibition against carrying open bottles or cans themselves. Thus, we hold that a ripped cardboard package holding beer cans, whether the package is full or not, located in the passenger compartment of a vehicle absent evidence that at least one of the individual containers is open, does not violate section 11—502 of the Code.

■ Furthermore, as this court stated in *People v. Hilt*, 298 Ill. App. 3d 121, 125 (1998), a police officer's observation of an inherently innocuous item does not provide the officer with probable cause to search. This court noted in *Hilt* that other cases have found wooden boxes, film canisters, prescription bottles, and packages wrapped in opaque plastic to be innocuous items that do not provide probable cause to search. *Hilt*, 298 Ill. App. 3d at 125.

A ripped cardboard beer package is innocuous because, in and of itself, a cardboard package in any condition is not illegal. Specifically, a cardboard beer package is used for the legitimate purpose of transporting cans or bottles of beer, and this is precisely the purpose for which the cardboard package of beer was being used in this case. Also, it is not illegal to have a passenger in your car who is drunk. If it were illegal, the concept of designated drivers would be rendered a nullity. Because the cardboard beer package was legal to possess and it is legal to have a passenger in your car who is intoxicated, we conclude that the trial court's judgment that the officers did not have probable cause to search the van was proper.

## III. CONCLUSION

For these reasons, the judgment of the circuit court of Jo Daviess County is affirmed.

Affirmed.

INGLIS and GEIGER, JJ., concur.