THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHAEL STEHMAN, Defendant-Appellee.

Second District   No. 2—00—0687

Opinion filed July 30, 2001.

BOWMAN, J., concurring in part and dissenting in part.

Ronald G. Matekaitis, State's Attorney, of Sycamore (Martin P. Moltz and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Max G. Peterson, Jr., of Aurora, for appellee.

JUSTICE BYRNE delivered the opinion of the court:

Defendant, Michael Stehman, was arrested for unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 1998)). Defendant moved to suppress evidence and quash his arrest. This motion was granted. The State now appeals pursuant to Supreme Court Rule 604(a)(1) (188 Ill. 2d R. 604 (a)(1)). We affirm.

At the hearing on defendant's motion to suppress evidence and quash his arrest, defendant testified that he was working at a pizza restaurant in Sandwich on January 13, 2000. Defendant was returning to the restaurant at around 5 p.m. after making deliveries. As defendant pulled into the employee parking lot of the restaurant, he saw a police squad car sitting in a parking lot that was across the street

from the restaurant. Defendant parked his car in the restaurant's parking lot, exited his car with the pizza delivery bags, and walked towards an entrance to the restaurant. Defendant left his car keys and the money he collected from the pizza deliveries in his car. Defendant testified that his car's windows were up.

When defendant was 7 to 10 feet away from his car, he heard someone call his name. Defendant turned around and saw Officer Thomas Richardson calling him. Defendant also observed that Officer Richardson's squad car was parked right behind defendant's car. Defendant gave the delivery bags he was carrying to his brother, Ron Stehman, who also worked for the pizza restaurant, and walked towards Officer Richardson. Officer Richardson asked defendant if his name was Mike Stehman, and defendant said yes. Officer Richardson then told defendant that he had a warrant for defendant's arrest. The warrant was issued because defendant missed a scheduled court date. Defendant agreed that he had failed to appear on a scheduled court date, but he did not remember why he was required to appear in court.

Officer Richardson performed a pat-down search on defendant and did not find anything during the search. Officer Richardson then placed defendant in handcuffs and put defendant in the backseat of the squad car. All the doors and windows to the squad car were closed. Defendant then saw Officer Richardson walk towards defendant's car. Defendant never gave Officer Richardson permission to search defendant's car. When Officer Richardson was three to four feet away from the squad car, defendant yelled from the backseat of the squad car that he did not want Officer Richardson searching defendant's car.

Defendant told Ron, who was standing in the parking lot, to tell Officer Richardson that the officer could not search defendant's car. Defendant saw Ron approach Officer Richardson, and Officer Richardson motioned for Ron to go inside the restaurant. Defendant then saw Officer Richardson proceed to search defendant's car. During the search of defendant's car, Officer Richardson found a pipe that is used to smoke marijuana.

Ron Stehman's testimony was consistent with defendant's. Ron testified that when defendant was in the squad car, he approached the squad car to hear what defendant was yelling. Ron heard defendant tell him that Officer Richardson did not have permission to search defendant's car. Ron approached Officer Richardson and told the officer that the officer did not have permission to search the car. Officer Richardson said, "I don't give a f--- what he has to say." The officer then told Ron to get away from the squad car, and Ron went to go stand on the sidewalk.

Officer Richardson's testimony was, for the most part, consistent

with defendant's and Ron's. Officer Richardson testified that at 8 p.m. on January 13, 2000, he was aware that there was an outstanding warrant for defendant's arrest. The warrant was issued because defendant failed to appear in court. Officer Richardson's dispatcher told Officer Richardson that defendant worked at the pizza restaurant. The dispatcher told Officer Richardson what type of car defendant drove and gave the officer the car's license plate number. Officer Richardson went to the pizza restaurant and waited for defendant in a parking lot that was across the street from the restaurant.

Officer Richardson testified that he pulled in behind defendant when defendant was still in his car. Both defendant and Officer Richardson exited their cars at the same time. Officer Richardson testified that the only reason he approached defendant was to arrest defendant on the outstanding warrant. The warrant was issued because defendant violated the conditions of his bail bond, but the officer could not remember on what type of charge defendant posted bail. Officer Richardson verified that defendant was Michael Stehman and then placed defendant under arrest. Officer Richardson agreed that he did not have a warrant to search defendant's car and that he never asked defendant for permission to search defendant's car. Officer Richardson stated that he searched defendant's car incident to defendant's arrest and pursuant to the police department's tow policies. Officer Richardson later decided not to tow defendant's car and allowed Ron to take defendant's car. The details of the tow policy were not made part of the record on appeal. Officer Richardson stated that he suspected there was something in defendant's car because Ron was making noise and telling the officer not to search the car. Officer Richardson testified that he was concerned for his safety because Ron was being "mouthy." However, Ron never threatened Officer Richardson.

The trial court granted defendant's motion to suppress evidence and quash defendant's arrest. In granting the motion, the court made the following statements:

"[F]irst of all, [Officer] Richardson, you come here to court and you tell a story while you're searching that vehicle. I don't find anything of that to be true. You're searching the vehicle because you think you have the right to the incidental to arrest [sic].

When you come here and start making up stories *** well, you thought your safety and all, that is absolutely nonsense. There's nothing about this that gives any indication of any safety issues.

This is a case where you didn't stop this vehicle. This vehicle was already stopped. This defendant was walking across a parking lot when you first put him under arrest. That was his testimony. That was his brother's testimony and you don't know. *** There's noth-

ing about a failure to appear in court that has anything to do with the car. *** I think you suspected something might be [in the car] ***, but the search incidental to arrest is not a wide open situation where every time an officer makes an arrest that gives him the right to then invade other property that belongs to somebody just to see what the officer can find and that's what happened here. You looked in that vehicle having nothing to do with towing and you come here and you want to testify in this court that this had something to do with towing and then you say, well, I don't even know what the towing policy is. *** I don't find that this is incidental to an arrest at all."

This timely appeal followed.

The State argues that the search was proper pursuant to *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981). The State claims that a police officer may search a defendant's car incident to the defendant's arrest when the defendant was a recent occupant of the car. Defendant argues that the search was improper because he was not an occupant of his car when Officer Richardson first made contact with defendant. Defendant claims that there must be some nexus between the arrest and the car in order for the search to be deemed proper.

●1 We must first address the standard of review that applies in this cause. In reviewing a trial court's ruling on a motion to suppress evidence, the appellate court must first review the trial court's findings of fact under a manifestly erroneous standard. *People v. Nadermann*, 309 Ill. App. 3d 1016, 1020 (2000). Under this standard, a trial court's findings will be reversed only if the findings are arbitrary, unreasonable, and not based on the evidence. *Nadermann*, 309 Ill. App. 3d at 1020.

Here, the testimony was fairly consistent amongst the witnesses. However, there were some variations, and the trial court made some findings of fact based on these variations. For example, the trial court found that Officer Richardson was not a credible witness. The court also did not believe that Officer Richardson was in danger when the search was conducted. The court stated that defendant had stopped his car and was walking across the parking lot when he was arrested. We determine that these findings of fact were not manifestly erroneous. We now review *de novo* the legal conclusions that the trial court reached. See *Nadermann*, 309 Ill. App. 3d at 1021.

●2 Both the United States Constitution and the Illinois Constitution protect every person from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6. In general, a search is reasonable only if the government first obtains a warrant authoriz-

ing the search. *People v. Fulton*, 289 Ill. App. 3d 970, 973 (1997). A warrantless search is deemed *per se* unreasonable unless it is supported by one of a few specifically established exceptions. *People v. Rucker*, 294 Ill. App. 3d 218, 223 (1998). One such exception, the "automobile exception," provides that when an officer has made a lawful custodial arrest of an occupant of a car, the officer may search the car's passenger compartment. *People v. Bosnak*, 262 Ill. App. 3d 122, 126 (1994).

This "automobile exception" was first announced in *Belton*. In *Belton*, the Court adapted to automobiles the "search incident to arrest" exception that was addressed in *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969). *Chimel* provided that an officer may search the area within a defendant's immediate control where the defendant could gain possession of a weapon or destroy evidence. *Belton*, 453 U.S. at 457-58, 69 L. Ed. 2d at 773, 101 S. Ct. at 2863. As in *Chimel*, the Court in *Belton* sought to establish a bright-line rule for lawful searches that police officers could follow easily. *Belton*, 453 U.S. at 458-60, 69 L. Ed. 2d at 774-75, 101 S. Ct. at 2863-64.

Our supreme court adopted the *Belton* rule in *People v. Bailey*, 159 Ill. 2d 498 (1994). *Bailey* noted that *Belton* justified a search of the vehicle incident to the arrest of the driver regardless of the nature of the offense that supported the arrest. *Bailey*, 159 Ill. 2d at 505. Thus, the fact that both defendants in *Bailey* were pulled over for minor traffic violations did not prohibit the officers from searching the cars where evidence of much more serious crimes was found. *Bailey*, 159 Ill. 2d at 505.

In contrast to both *Belton* and *Bailey*, defendant here was stopped and arrested on a warrant that had no connection to the automobile defendant was driving. Moreover, defendant did not know that Officer Richardson was looking for him until after defendant exited his car and proceeded to return to work. Neither of the parties addressed a case that was factually similar to the facts presented here, and our own research did not uncover an Illinois case that was similar. However, we did find a Michigan case that is similar to the situation presented here.

In *People v. Fernengel*, 216 Mich. App. 420, 424, 549 N.W.2d 361, 362 (1996), the police learned that there was an outstanding warrant for the defendant's arrest. The defendant owned a restaurant, and, in order to effectuate an arrest, the police decided to order some food from the restaurant and arrest the defendant when he stepped out of his car to deliver the food. *Fernengel*, 216 Mich. App. at 424, 549 N.W.2d at 362. The defendant drove to the public safety building where the officers were waiting, got out of his car, and was approximately 20

to 25 feet away from his car when he was arrested. *Fernengel*, 216 Mich. App. at 424, 549 N.W.2d at 362. While the defendant was being handcuffed, some of the officers searched the defendant's car and found a gun. *Fernengel*, 216 Mich. App. at 424, 549 N.W.2d at 362. This evidence was then used to convict defendant of carrying a concealed weapon and unlawful possession of a weapon by a felon. *Fernengel*, 216 Mich. App. at 424, 549 N.W.2d at 362.

The court in *Fernengel* refused to follow the bright-line rule announced in *Belton*. *Fernengel*, 216 Mich. App. at 425, 549 N.W.2d at 363. The court reasoned that *Belton* did not apply because the defendant's confrontation with the police did not occur until after the defendant had exited his car voluntarily and walked 20 to 25 feet away from the car. *Fernengel*, 216 Mich. App. at 425, 549 N.W.2d at 362. The court noted that if it followed the bright-line *Belton* rule in a case where the defendant voluntarily exited the car, the purpose for the rule, which was advanced to guide police officers when conducting searches, would become hazy and uncertain. *Fernengel*, 216 Mich. App. at 425, 549 N.W.2d at 362. Officers would be left to wonder what combination of spatial and temporal proximity a defendant must have to his car before a search may be conducted. *Fernengel*, 216 Mich. App. at 425, 549 N.W.2d at 362.

●3 Here, as in *Fernengel*, defendant had voluntarily exited his car and was headed back to work when he was arrested. Moreover, Officer Richardson admitted that he did not see defendant commit any traffic violation. Although defendant here was not 20 to 25 feet away from his car, as in *Fernengel*, we do not believe, under the facts here, that the distance defendant was away from his car mandates a conclusion that the search was proper. Rather, we hold that when a motorist, who has not been stopped by the police and has not committed a traffic offense, voluntarily exits his car before the police approach and does not exit his car to avoid police contact, a subsequent warrantless search of the motorist's car incident to arrest is unconstitutional.

We find additional support for our position in *Florida v. Howard*, 538 So. 2d 1279, 1280 (Fla. App. 1989). In *Howard*, the arresting police officer learned that there was an outstanding arrest warrant for the defendant. *Howard*, 538 So. 2d at 1280. The officer found the defendant's car, which the defendant was driving at the time, and began to follow the defendant. *Howard*, 538 So. 2d at 1280. The officer followed the defendant into a convenience store parking lot and saw the defendant exit the car with a pouch in his hand. *Howard*, 538 So. 2d at 1280. As the defendant exited his car, he saw the police officer, and the defendant placed the pouch inside the defendant's car and locked the doors to his car. *Howard*, 538 So. 2d at 1280. The police of-

ficer approached the defendant, advised the defendant of the warrant, and arrested the defendant. *Howard,* 538 So. 2d at 1280. The defendant's brother arrived, and the defendant told his brother to tell the police officer that the officer did not have permission to search the car. *Howard,* 538 So. 2d at 1280. The defendant's brother tried to get the car keys from the defendant, but the officer retrieved the keys first. *Howard,* 538 So. 2d at 1280. The officer told the brother to stand back, and the officer then began searching the car. *Howard,* 538 So. 2d at 1280. During the search, contraband was found. *Howard,* 538 So. 2d at 1280.

The trial court suppressed the evidence that was found during the search, and the appellate court affirmed. *Howard,* 538 So. 2d at 1280. The appellate court noted that the officer's suspicions were aroused when, among other things, the defendant tried to prevent the search of his car. *Howard,* 538 So. 2d at 1280. However, this suspicion did not rise to the level of probable cause, and the officer had no valid need or reason to search the defendant's car as a search incident to the defendant's arrest. *Howard,* 538 So. 2d at 1280.

The holding in *Howard* was more fully developed by the Florida Supreme Court in *Thomas v. Florida,* 761 So. 2d 1010 (Fla. 1999). In *Thomas,* the police were outside a residential home making arrests for narcotics violations. *Thomas,* 761 So. 2d at 1010. During this time, the defendant pulled into the driveway of the home and exited his car. *Thomas,* 761 So. 2d at 1010. As the defendant walked to the rear of his own car, the officer approached him and asked the defendant what his name was and whether he had a driver's license. *Thomas,* 761 So. 2d at 1010. A subsequent check of the defendant's driver's license revealed that the defendant had an outstanding warrant for his arrest. *Thomas,* 761 So. 2d at 1010. The defendant was arrested, and a subsequent search of the defendant's car uncovered methamphetamine. *Thomas,* 761 So. 2d at 1010.

The Florida Supreme Court concluded that the search was improper. *Thomas,* 761 So. 2d at 1014. In reaching this conclusion, the court stated that *Belton*'s bright-line rule is limited to situations where the officer initiates contact with the defendant before the defendant has exited the car and subsequently arrests the defendant regardless of whether the defendant has actually been removed from or has exited the car. *Thomas,* 761 So. 2d at 1014. The court warned that defendants could not utilize this "exception" to the *Belton* bright-line rule and avoid lawful searches merely by exiting their cars before the officers approach. *Thomas,* 761 So. 2d at 1014.

We note that other similar cases have concluded that a search is proper when a defendant voluntarily exits his car before the police ap-

proach. In these cases, the courts were concerned that a defendant would avoid a lawful search by quickly exiting the car and sneaking away from the police before the police had an opportunity to approach the defendant. See *Bosnak*, 262 Ill. App. 3d 129; *People v. Savedra*, 907 P.2d 596, 599 (Colo. 1995); *North Dakota v. Wanzek*, 598 N.W.2d 811, 815 (N.D. 1999); *Glasco v. Commonwealth of Virginia*, 257 Va. 433, 440, 513 S.E.2d 137, 141 (1999). However, another concern is that police may create a pretext to conduct a warrantless search of a defendant's car by simply waiting for the defendant to exit his car before arresting the defendant. See *United States v. Arango*, 879 F.2d 1501, 1505-06 (7th Cir. 1989) (upholding search of the defendant's vehicle when the defendant was arrested one block away from his car, but recognizing that officers may not artificially create a situation into which an exception to the search warrant requirement may fit and thus justify a search under the created circumstances).

Here, we determine that Officer Richardson created the situation that the State now argues justified the search. More specifically, the evidence revealed that Officer Richardson knew that defendant delivered pizzas and that defendant used a car to make his deliveries. Based on this information, Officer Richardson waited outside the pizza restaurant for defendant to return to work. Once defendant returned to work, Officer Richardson immediately arrested defendant and searched defendant's car because defendant was a "recent occupant" of the car. We conclude, under the facts presented in this cause, that this is precisely the type of evil that the rote application of the bright-line rule in *Belton* may create, and we therefore decline to apply that rule here. See *Knowles v. Iowa*, 525 U.S. 113, 118-19, 142 L. Ed 2d 492, 499, 119 S. Ct. 484, 488 (1998) (recognizing that the bright-line rule the United States Supreme Court created for a search incident to arrest could not be extended to justify a warrantless search of the defendant's car in a situation where the defendant, who could have been arrested for a speeding violation, was issued only a citation for speeding, and there was no evidence suggesting that the officer's safety was in jeopardy or that the need to preserve evidence was a concern). We believe that the Court in *Belton* never intended *Belton*'s rule to be employed to justify a search under the facts presented in this cause.

We disagree with the dissent's conclusion that *Bosnak* controls the outcome of this case. In *Bosnak*, the defendant drove toward two police cars that faced him and were parked along the opposite side of the street. The defendant testified that, because a trash Dumpster partially blocked his path and because the road was narrow, he passed within five feet of the police cars. The arresting officer testified that (1) the defendant's car nearly collided with his squad car, (2) he knew

that the defendant's license had been suspended, and (3) he suspected that the defendant was driving under the influence of alcohol. The defendant drove 200 yards, parked 100 yards from his apartment building, and walked toward his home. After the defendant had walked approximately 10 yards, the arresting officer approached him on foot. One of the police cars was parked 15 to 20 yards from the defendant's car, but the defendant did not see that its emergency lights were activated until the officer spoke to him. *Bosnak*, 262 Ill. App. 3d at 124. The officer demanded the defendant's driver's license, and when he could not produce one, the defendant was placed in the police car. The defendant was arrested for driving under the influence of alcohol and for driving with a suspended license. A search of the defendant's car disclosed cannabis. *Bosnak*, 262 Ill. App. 3d at 125.

The trial court suppressed the cannabis, concluding that the search of the car was neither a proper inventory search nor a valid search incident to arrest. We reversed, holding that "[w]here, as in the present case, *the officer pursues an automobile based upon his recent observation of the driver's actions*, and arrests the driver who has just exited the vehicle and is still within its immediate vicinity, the officer may reasonably consider the driver to be a 'recent occupant' within the contemplation of *Belton*, so that a search of the passenger compartment incident to the arrest will be authorized." (Emphasis added.) *Bosnak*, 262 Ill. App. 3d at 128. In *Bosnak*, the officer's observation of the defendant's erratic driving created a nexus between the curbside arrest and the search of the car. In this case, defendant was also stopped after he had voluntarily exited his car, but here his car had no connection to the outstanding warrant that justified the arrest. Furthermore, Officer Richardson admitted that he did not see defendant drive erratically or commit any traffic offense, and the State offered no evidence that defendant exited the car to avoid an encounter with the police. Under these circumstances, there was no nexus between defendant's behavior while driving and the reason for the arrest that would justify a search of the vehicle's passenger compartment pursuant to *Belton*.

Having concluded that *Belton* does not apply, we must determine if the search was a proper search incident to arrest as discussed in *Chimel*. See *People v. Kolody*, 200 Ill. App. 3d 130, 135-36 (1990) (addressing *Chimel* after finding *Belton* inapplicable and noting that the State claimed that the search was proper as a search incident to arrest under *Belton*). Under *Chimel*, an arresting officer may search the area within the defendant's immediate control. *Kolody*, 200 Ill. App. 3d at 136. This type of search is a proper warrantless search because it serves to protect the arresting officer from danger and prevent any evidence from being destroyed. *Kolody*, 200 Ill. App. 3d at 136.

Here, nothing suggested that the marijuana pipe found in defendant's car was in an area within defendant's immediate control. At the time defendant was arrested and the search was conducted, defendant was handcuffed and seated in the back of the squad car. Based on these facts, we conclude that the search of defendant's car was not justified as a search incident to arrest under *Chimel.*

As a final matter, although neither party fully addressed the propriety of the search as an inventory search incident to the car being towed, we note that the search could not be justified under this scenario. See *People v. Evans*, 314 Ill. App. 3d 985, 987, 990 (2000) (noting that a proper inventory search of a vehicle could be conducted when the car *had* to be towed because it was parked on the shoulder of the road and defendant was arrested for driving on a suspended license). Here, defendant's car was parked in a private parking lot, and no evidence suggested that the car had to be removed from the parking lot.

For these reasons, the judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

RAPP, J., concurs.

JUSTICE BOWMAN, concurring in part and dissenting in part:

I respectfully dissent in part.

I agree with the majority's holding that the search of defendant's vehicle cannot be justified as an inventory search incident to the car being towed. I disagree, however, with the determination that the search of the car was not proper under *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981). I believe *Belton* is applicable, and, therefore, there is no need to consider whether the search was proper under *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969). Further, in my opinion the determination of whether this was a proper search incident to arrest is controlled by *People v. Bosnak*, 262 Ill. App. 3d 122 (1994).

In *Bosnak*, the defendant was arrested for driving with a suspended license. The police discovered cannabis in the glove compartment of Bosnak's car. The trial court granted Bosnak's motion to suppress the cannabis. *Bosnak*, 262 Ill. App. 3d at 124-25.

Evidence at the suppression hearing indicated that Bosnak, while driving to his apartment, passed two police cars parked on the side of the street without lights. *Bosnak*, 262 Ill. App. 3d at 123. After driving about 200 yards past the police cars, Bosnak drove to the side of the

street and parked 100 feet from his apartment. He did not observe any police cars behind him with flashing emergency lights and the police did not make initial contact with him until he had parked his car and walked about ten yards from it. At this point, Bosnak heard somebody say, "Excuse me. Do you have a driver's license?" *Bosnak*, 262 Ill. App. 3d at 124. Upon turning, Bosnak observed a police officer and noticed a squad car without its emergency lights or headlights activated parked 15 to 20 yards from his car. A police officer directed Bosnak into the squad car and informed him that he was under arrest for driving with a suspended license. Prior to making contact with Bosnak, the police had information that his license was suspended. *Bosnak*, 262 Ill. App. 3d at 124.

After the officers placed Bosnak in one of the squad cars, one of the officers searched the interior of the car, purportedly to protect Bosnak's personal belongings, "for the legal reasons for the police department," and to search for evidence of alcohol consumption consistent with the officers' suspicion that Bosnak was under the influence of alcohol. *Bosnak*, 262 Ill. App. 3d at 125. In Bosnak's glove compartment, an officer found a bag containing a leafy green substance. *Bosnak*, 262 Ill. App. 3d at 125. The trial court suppressed the evidence obtained from the search, ruling that the search was neither a proper inventory search nor a proper search incident to arrest. *Bosnak*, 262 Ill. App. 3d at 125.

In analyzing whether the search of Bosnak's car was a proper search incident to arrest, we noted that the United States Supreme Court in *Belton* addressed the applicability of *Chimel* to searches of automobiles as follows:

> " 'While the *Chimel* case established that a search incident to arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of "the area within the immediate control of the arrestee" when that area arguably includes the interior of the automobile and the arrestee is its *recent occupant*.' " (Emphasis in original.) *Bosnak*, 262 Ill. App. 3d at 126, quoting *Belton*, 453 U.S. at 460, 69 L. Ed. 2d at 774, 101 S. Ct. at 2864.

The Supreme Court further held that " 'when a policeman has made a lawful custodial arrest of the *occupant of an automobile*, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile.' " (Emphasis in original.) *Bosnak*, 262 Ill. App. 3d at 126, quoting *Belton*, 453 U.S. at 460, 69 L. Ed. 2d at 775, 101 S. Ct. at 2864. We noted that *Belton* represents a departure from *Chimel* because *Belton* adopted a bright-line rule instead of a rule requiring a case-by-case determination of the area

within the arrestee's immediate control. *Bosnak*, 262 Ill. App. 3d at 126.

We recognized that some federal courts have declined to apply *Belton* where the police officer does not make initial contact with the arrestee until after the arrestee has exited his automobile, citing various cases. See *Bosnak*, 262 Ill. App. 3d at 127. We decided not to follow these cases and instead adopted the law and rationale set forth in *United States v. Franco*, 981 F.2d 470 (10th Cir. 1992), and *State v. Fry*, 131 Wis. 2d 153, 388 N.W.2d 565 (1986). *Franco* expressed a preference for the application of *Belton*'s bright-line rule in cases where the search of the vehicle is not too remote in time and place from the arrest and where the arrestee is a very recent occupant of the vehicle. *Bosnak*, 262 Ill. App. 3d at 127-28, citing *Franco*, 981 F.2d at 472.

We also agreed with the following reasoning set forth in *Fry*:

" 'The *Belton* rule is a simple and reasonable rule ***. A police officer may assume under *Belton* that the interior of an automobile is within the reach of a defendant when the defendant is still at the scene of the arrest, but *** not physically in the vehicle. We cannot say as a matter of fact that a defendant never could regain access to the interior of an automobile after initially leaving the vehicle. Thus, we would seriously undermine police security if we adopted *** the rule that the interior of an automobile never is within the reach of a suspect who is outside the vehicle at the arrest scene; such a rule would prohibit all automobile searches as an incident to an arrest, unless the defendant was allowed to remain in the automobile during the search, which increases the risk of danger to the officer.' " *Bosnak*, 262 Ill. App. 3d at 128, quoting *Fry*, 131 Wis. 2d at 174-75, 388 N.W.2d at 574.

Like the defendant in the case before us, the defendant in *Bosnak* was not stopped by a police officer until after he had exited his car, and the officer did not search the car until after the defendant had been placed in a squad car. Due to the similarity between *Bosnak* and the case at bar, I believe *Bosnak* is controlling.

In addition, I disagree with the majority's reliance upon the absence of evidence that the officer's safety was in jeopardy or that a need to preserve evidence existed. The Illinois Supreme Court, in *People v. Bailey*, 159 Ill. 2d 498 (1994), rejected the majority's position by recognizing that, under *Belton*, " '[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; *that intrusion being lawful, a search incident to the arrest requires no additional justification.*' " (Emphasis in original.) *Bailey*, 159 Ill. 2d at 504, quoting *Belton*, 453 U.S. at 461, 69 L. Ed. 2d at 775-76, 101 S. Ct. at 2864. The court in *Bailey* further held that, al-

though a search incident to an arrest is based on the need to disarm and discover evidence, the authority to search does not depend upon the probability that weapons would be found or evidence would be destroyed. *Bailey*, 159 Ill. 2d at 504.

Accordingly, under *Bailey* and *Bosnak*, lack of danger to the arresting officer and the absence of a need to preserve evidence do not render the search improper. The only questions for the court to determine are whether the officer made a lawful custodial arrest of the defendant and whether the defendant was a recent occupant of an automobile. Because both requirements were met in this case, I would reverse the judgment of the trial court.