THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ROCKIE BOSNAK, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ONE DODGE DAYTONA TWO DOOR, VIN 183XW4438NN240983, Defendant (Rockie Bosnak, Claimant-Appellee).

Second District    Nos. 2—93—0051, 2—93—0646 cons.

Opinion filed May 4, 1994.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and William L. Browers and Lisa A. Hoffman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Joseph T. Bugos, of Donahue, Sowa & Bugos, of Lisle, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

The State appeals, pursuant to Supreme Court Rule 604(a)(1) (134 Ill. 2d R. 604(a)(1)), from the circuit court's order granting the motion of defendant, Rockie Bosnak, to suppress evidence. The State also appeals, pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308), from the circuit court's order granting defendant's motion *in limine* in a related forfeiture proceeding. We consolidated the appeals. The issue in both appeals is whether a search of defendant's car following his arrest for driving with a suspended license was a proper search incident to arrest.

The State charged defendant by indictment with the unlawful possession of more than 30 grams but less than 500 grams of a substance containing cannabis (Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 704(d) (now 720 ILCS 550/4(d) (West 1992))) and by information with driving under the influence of alcohol (Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 11—501(a)(2) (now 625 ILCS 5/11—501(a)(2) (West 1992))). Defendant also received a traffic complaint charging him with driving with a suspended license (Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 6—303(a) (now 625 ILCS 5/6—303(a) (West 1992))).

Defendant moved to quash his arrest and to suppress all evidence obtained as a result of the search of his car. At the hearing, defendant testified that, on October 2, 1992, he resided in an apartment complex on Tennessee Drive in Willowbrook. At about 12:45 a.m., he was driving west on 75th Street and then turned onto Tennessee Drive.

As he was driving north on Tennessee Drive, defendant saw two Willowbrook police cars parked alongside the street, facing south, with their lights off. Defendant testified that the police cars were parked in the road and that there was a trash dumpster on the other side of the road just across from the cars. Defendant drove past the

police cars and continued toward his apartment building. Because the road upon which he was driving was narrow, defendant's car passed within about five feet of the police cars.

Defendant drove another 200 yards and parked his car about 100 yards from his apartment building. Defendant testified that, during this or any other time, he never saw the police cars with their emergency lights activated. He exited his car, locked it, and began walking towards his apartment building. As he was about 10 yards from his car, he heard someone say, "Excuse me. Do you have a driver's license?" Defendant turned around and saw a police officer. Defendant also noticed that there was a squad car parked about 15 to 20 yards from where his car was parked. The squad car did not have its emergency lights or its headlights activated.

Defendant walked up to the officer and asked him if there was a problem. The officer again asked to see defendant's driver's license, and defendant responded that he did not have it with him. The officer told defendant to get into the squad car. After defendant entered the car, he twice asked the officer if he was under arrest. The officer did not respond. The officer "fidgeted" with something in the front seat of the squad car and then informed defendant that he was under arrest for driving with a suspended license.

Upon the officer's request, defendant handed the officer his car keys. The officer then took defendant to the police station. Defendant fell asleep at the police station. The officer woke defendant up and asked him to take a breath test, which he did.

Officer Mark Shelton of the Willowbrook police department testified that, at about 12:45 a.m. on October 2, 1992, he turned his marked squad car off of Tennessee Drive and into the westbound lane of 75th Street. The squad car's headlights were on. As he made this turn, a vehicle that was turning onto Tennessee Drive from 75th Street nearly collided with his squad car. Shelton made a U-turn and followed the vehicle. As he followed the vehicle, he punched its license plate number into his computer. The computer revealed that the car was registered to a person whose driver's license had been suspended. The computer also provided Shelton with a physical description of that person.

Shelton testified that he activated his emergency lights. He admitted, however, that he failed to include this fact in his police report. Shelton explained that activating the emergency lights is a common practice when stopping a vehicle. The vehicle pulled into a parking spot, and Shelton pulled his squad car behind it. Defendant began to exit the car. Shelton exited his vehicle, checked to make sure that the driver matched the description provided by the com-

puter, and said, "Hey, Rockie." Defendant turned and said, "Yes?" As Shelton approached defendant, defendant was just starting to get out of his vehicle and had his arm on the door to lift himself up. Shelton admitted that he did not include this fact in his police report.

Shelton asked defendant for his driver's license, and defendant stated that he did not have it. Shelton asked defendant if his license was suspended, and defendant said that it was. Based on his observations of defendant, Shelton suspected that defendant was under the influence of alcohol. He told defendant he was under arrest for driving with a suspended license, placed defendant under arrest, and handcuffed him. Shelton testified that he arrested defendant while defendant was standing right behind his car. He then placed defendant in the backseat of the squad car.

Shelton walked to defendant's car, took the keys out of the ignition, and began to search the interior of the car. Shelton testified that the purpose of the search was to secure and protect defendant's personal belongings "and also for the legal reasons for the police department." Because he suspected that defendant was under the influence of alcohol, Shelton also searched the car for evidence of alcohol consumption. He found in the glove compartment a bag containing a green leafy substance. Shelton then called for a tow truck and inventoried other miscellaneous items that were inside the car. After he supervised the towing of the car, he brought defendant to the police station.

The trial court found that the arrest was valid, but suppressed the evidence obtained as a result of Shelton's search of the car. The court concluded that the search could not be considered a proper inventory search. It also concluded that the search could not be considered a proper search incident to arrest because defendant was already in the squad car. The court denied the State's motion to reconsider. The State filed a certificate of impairment and a timely notice of appeal.

The State also initiated forfeiture proceedings against defendant's car. Defendant moved *in limine* for the exclusion of the evidence obtained as a result of Shelton's search of the car. Relying on the suppression order in the criminal case, the trial court granted defendant's motion. Pursuant to Supreme Court Rule 308(a) (134 Ill. 2d R. 308(a)), the trial court found that its ruling involved a question of law as to which there is a substantial ground for a difference of opinion and that an immediate appeal from the ruling may materially advance the ultimate termination of the litigation. We allowed an appeal from this interlocutory order and consolidated it with the appeal in the criminal case.

On appeal, the State argues that Officer Shelton discovered the cannabis pursuant to a lawful search of the passenger compartment of the car incident to defendant's arrest. The parties do not address the validity of the arrest or whether the search could be considered a proper inventory search.

It is well settled that a search incident to arrest is a traditional exception to the warrant requirement of the fourth amendment. (*United States v. Robinson* (1973), 414 U.S. 218, 224, 38 L. Ed. 2d 427, 434, 94 S. Ct. 467, 471.) The general rule is that, when the police have lawfully arrested a person, they may search that person and the area within his immediate control. (*Chimel v. California* (1969), 395 U.S. 752, 763, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040.) The rationale for this rule is the need to remove any weapons that the arrestee might seek to use to resist arrest and to prevent the concealment or the destruction of evidence. *Chimel*, 395 U.S. at 763, 23 L. Ed. 2d at 694, 89 S. Ct. at 2040.

■ In *New York v. Belton* (1981), 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, the United States Supreme Court addressed the applicability of this rule to searches of automobiles and commented:

"While the *Chimel* case established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its *recent occupant*." (Emphasis added.) (*Belton*, 453 U.S. at 460, 69 L. Ed. 2d at 774, 101 S. Ct. at 2864.)

The court went on to hold that, "when a policeman has made a lawful custodial arrest of the *occupant of an automobile*, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." (Emphasis added.) (*Belton*, 453 U.S. at 460, 69 L. Ed. 2d at 775, 101 S. Ct. at 2864.) Because *Belton* adopted a bright-line rule instead of a rule requiring a case-by-case determination of the area within the arrestee's immediate control, it represents a departure from the rationale underlying *Chimel*.

Defendant claims that *Belton* does not apply because he was not an "occupant of an automobile" just prior to his arrest. We note that the testimony of defendant and the arresting officer regarding this factual issue is in conflict. Because the trial court heard the testimony, saw the witnesses, and observed the witnesses' demeanor, it is in the best position to judge the witnesses' credibility and resolve any conflicts in the evidence. (*People v. Frazier* (1993), 248 Ill. App. 3d 6, 13.) Also, because the trial court made no express findings regarding certain dispositive factual issues, we presume it credited

only the testimony that supports its ruling. *People v. Winters* (1983), 97 Ill. 2d 151, 158; *People v. Kolody* (1990), 200 Ill. App. 3d 130, 136.

Relying on these principles, we assume that the court believed that defendant did not see the officer's emergency lights and that the officer did not make initial contact with defendant until defendant had parked his car and walked 10 yards from it. Some courts have held that *Belton* does not apply in situations such as this where the police officer does not make initial contact with the arrestee until after the arrestee has exited his automobile. See *United States v. Strahan* (6th Cir. 1993), 984 F.2d 155, 159 (because the officers did not make initial contact with defendant until after defendant exited his car and walked 30 feet from it, they did not arrest an occupant of a vehicle); *United States v. Fafowora* (D.C. Cir. 1989), 865 F.2d 360 (*Chimel*, not *Belton*, applies where defendants had walked about one car length from their vehicle by the time they encountered the arresting officers).

Other courts have reached an opposite conclusion, however. In *United States v. Franco* (10th Cir. 1992), 981 F.2d 470, the defendant met with an undercover agent in a parking lot and parked his vehicle next to the agent's van. The defendant entered the van, exited it shortly thereafter, reached into his vehicle, and returned with a bag of cocaine. Another vehicle entered the parking lot. The defendant became frightened and returned to his vehicle for a short time. He returned to the agent's van, where the agent gave the defendant a pistol in exchange for the cocaine. The agent arrested the defendant in the agent's van and searched the defendant's vehicle.

The court applied *Belton* and upheld the search. The court noted that, although the defendant was arrested in the van, the van was parked in proximity to the defendant's car. It also noted that the defendant's two trips to his vehicle during the transaction established that he was in control of his vehicle "at that time and at the time of the arrest." (*Franco*, 981 F.2d at 472-73.) In support of its holding, the court stated:

> " 'The facts surrounding each arrest are unique and it is not by any means inconceivable under those various possibilities that an arrestee could gain control of some item within the automobile. The law simply does not require the arresting officer to mentally sift through all these possibilities during an arrest, before deciding whether he may lawfully search within the vehicle.' " (*Franco*, 981 F.2d at 473, quoting *United States v. Cotton* (10th Cir. 1985), 751 F.2d 1146, 1148.)

The *Franco* court expressed a preference for the application of *Belton*'s bright-line rule in cases where the search of the vehicle is not

too remote in time and place from the arrest (see *Franco*, 981 F.2d at 472), and where the arrestee is a very recent occupant of the vehicle.

Also instructive is the court's reasoning in *State v. Fry* (1986), 131 Wis. 2d 153, 388 N.W.2d 565. In *Fry*, a police officer pulled over the defendant's vehicle. After obtaining the defendant's license, the officer went back to his squad car to run a check on the license. After a few minutes, the defendant exited his vehicle and walked to the squad car to ask the officer what was happening. The officer arrested the defendant while the defendant was standing between his car and the squad car.

In upholding the subsequent search of the defendant's car, the supreme court of Wisconsin stated:

> "The *Belton* rule is a simple and reasonable rule \*\*\*. A police officer may assume under *Belton* that the interior of an automobile is within the reach of a defendant when the defendant is still at the scene of an arrest, but \*\*\* not physically in the vehicle. We cannot say as a matter of fact that a defendant never could regain access to the interior of an automobile after initially leaving the vehicle. Thus, we would seriously undermine police security if we adopted \*\*\* the rule that the interior of an automobile never is within the reach of a suspect who is outside the vehicle at the arrest scene; such a rule would prohibit all automobile searches as an incident to arrest, unless the defendant was allowed to remain in the automobile during the search, which increases the risk of danger to the officer." *Fry*, 131 Wis. 2d at 174-75, 388 N.W.2d at 574.

●2 We find the reasoning of *Franco* and *Fry* persuasive. *Belton* expressed a preference for a bright-line rule in situations where "the area within the immediate control of the arrestee" arguably includes the interior of an automobile and the arrestee is its "recent occupant." (*Belton*, 453 U.S. at 460, 69 L. Ed. 2d at 774, 101 S. Ct. at 2864.) Where, as in the present case, the officer pursues an automobile based upon his recent observation of the driver's actions, and arrests the driver who has just exited the vehicle and is still within its immediate vicinity, the officer may reasonably consider the driver to be a "recent occupant" within the contemplation of *Belton*, so that a search of the passenger compartment incident to the arrest will be authorized.

The court in *Fry* seemed concerned primarily with the protection of the arresting officer. Also important is *Chimel*'s concern about preventing the destruction or concealment of evidence. An occupant of an automobile often will have a ready opportunity to attempt to destroy or conceal evidence within the passenger compartment before exiting it. Application of the *Belton* rule to the "recent occupant"

scenario serves, as demonstrated by the present circumstances, to curtail the destruction or concealment of evidence by a suspect who, contemporaneous with an officer's approach, has very recently departed a vehicle.

If we were to adopt a contrary rule, we would be giving a driver or a passenger the power to avoid an otherwise lawful search of the vehicle by quickly exiting and moving away from the vehicle before the officer has an opportunity to approach him. The undesirable consequences of such a rule are well illustrated by *Strahan*. In that case, the court noted that the officers saw the defendant park his car and quickly exit it. The officers believed that the defendant moved hurriedly because he recognized the police vehicle, which the officers had used to arrest him on a prior occasion. (*Strahan*, 984 F.2d at 156.) By holding that the defendant was not an occupant of a vehicle, that court allowed the defendant to prevent a search that otherwise would have been permissible under *Belton*. Although we recognize that in the present case the trial court may have concluded that defendant was unaware of the officer's presence until the officer called to him, our analysis must focus upon the reasonableness of the officer's actions under the circumstances apparent to him, as opposed to defendant's state of mind.

Defendant claims that our decision in *Kolody* should control the outcome of this case. In *Kolody*, the defendant and some of his friends were "hanging out" in the parking lot of a bowling alley when a squad car drove up. The defendant was standing next to his car and talking to a friend. Upon observing beer bottles and learning that the defendant had provided the underage friend with beer, the police officer arrested defendant and searched his car. We held that the search was not a proper search incident to arrest under *Belton* because the defendant was not an occupant of the vehicle just before the arrest. *Kolody*, 200 Ill. App. 3d at 136.

We find *Kolody* to be distinguishable. Although the defendant in *Kolody* was in proximity to the vehicle, the arresting officer never saw the defendant inside the vehicle and could not have known whether the defendant was recently inside of it. The defendant was, therefore, neither an occupant nor a recent occupant of the vehicle. In the present case, the arresting officer began his observations of defendant while defendant was driving his car. It is clear, therefore, that defendant was an occupant of an automobile almost immediately prior to his arrest. We conclude that *Belton* allows searches of the passenger compartment of an automobile under these circumstances.

We acknowledge that there is a point at which a person who exits his vehicle can no longer be considered an "occupant of an

automobile" under *Belton.* (See *State v. Tompkins* (1988), 144 Wis. 2d 116, 123-24, 423 N.W.2d 823, 826 (*Belton* not applicable where defendant was arrested in a tavern after having exited his vehicle about 15 minutes earlier); *Gauldin v. State* (Tex. Crim. App. 1984), 683 S.W.2d 411, 414 (where defendant was approached by the police inside a tavern and led out to parking lot where he was arrested, and where defendant admitted to having driven to the bar within the hour, defendant was neither an "occupant" nor a "recent occupant" of his truck under *Belton*).) However, we do not perceive a distance of only 10 yards and a time span of only a few moments as barring the application of *Belton* in this case.

Defendant also argues that the search of his car was not a proper search incident to arrest because he was handcuffed and in the squad car at the time the officer conducted the search. Considering the trial court's comments, this appears to have been a primary factor in its decision to suppress the evidence. We have held, however, that a search of the vehicle is allowed under *Belton* even after the defendant is removed from it, handcuffed, and placed in a squad car. See *People v. Bailey* (1993), 247 Ill. App. 3d 611, 613, *appeal allowed* (1993), 153 Ill. 2d 557; *People v. Kalivas* (1991), 207 Ill. App. 3d 415, 418.

We will not disturb a trial court's ruling on a motion to suppress evidence unless that decision is manifestly erroneous. (*People v. Galvin* (1989), 127 Ill. 2d 153, 162.) Also, we will not disturb a trial court's ruling on a motion *in limine* unless that ruling constitutes an abuse of discretion. (*Poole v. City of Rolling Meadows* (1993), 253 Ill. App. 3d 154, 162-63.) At the hearing on the State's motion to reconsider, the State relied on *Belton* and *Kalivas.* The trial court found these cases to be distinguishable. The trial court erroneously concluded, however, that *Belton* does not apply. The search of defendant's car was a proper search incident to arrest under *Belton.* Accordingly, we conclude that the trial court's ruling on the motion to suppress the evidence was manifestly erroneous. We similarly conclude that the trial court's ruling on the motion *in limine* constituted an abuse of discretion.

Based on all of the foregoing, we reverse the trial court's orders and remand both causes for further proceedings.

Reversed and remanded.

INGLIS, P.J., and BOWMAN, J., concur.