(No. 92287.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MICHAEL STEHMAN, Appellee.

*Opinion filed December 19, 2002.*

THOMAS, J., dissenting.

James E. Ryan, Attorney General, of Springfield, and Ron Matekaitis, State's Attorney, of Sycamore (Joel D. Bertocchi, Solicitor General, William L. Browers and Lisa Anne Hoffman, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, Martin P. Moltz and Lawrence M. Bauer, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

Max G. Peterson, of Aurora, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Defendant, Michael Stehman, was arrested for unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 1998)). His motion to suppress evidence and quash arrest was granted by the circuit court of De Kalb County and the State appealed. 188 Ill. 2d R. 604(a)(1). The appellate court affirmed, with one justice concurring in part and dissenting in part. 324 Ill. App. 3d 54. We allowed the State's petition for leave to appeal. 177 Ill. 2d R. 315(a).

At the hearing on defendant's motion to suppress evidence and quash arrest, defendant testified that, on January 13, 2000, he was working at Genoa Pizza in Sandwich, Illinois. Defendant was returning to the restaurant at around 5 p.m. after making pizza deliveries when, as he pulled his vehicle into the employee parking lot, he saw a police squad car sitting in a parking lot across the street. Defendant stated that he parked his vehicle, exited carrying the pizza delivery bags and began to walk towards the restaurant. Defendant testified that

he left his car keys and the money bag for his deliveries in the vehicle, which was parked 7 to 10 feet from the restaurant's entrance with the windows rolled up and the driver's door closed. As defendant reached the restaurant's entrance, he heard someone call his name and, when he turned around, saw that it was a uniformed officer. Defendant also noticed that the officer's squad car was parked right behind defendant's vehicle. Defendant approached the officer after handing the delivery bags to his brother, Ron Stehman, who also worked for the restaurant and was standing just outside the door. The officer asked defendant if his name was Michael Stehman, and when defendant said yes, the officer told defendant that he had a warrant to arrest defendant for his failure to appear in court. At the hearing, defendant admitted that he had failed to appear on a scheduled court date, but stated that he did not remember why he was required to appear.

Defendant further testified that, after arresting him, the officer performed a pat-down search of defendant, placed him in handcuffs, and put him in the backseat of the squad car. Defendant stated that the officer got into the front seat, talked on the radio and was "writing down stuff" for several minutes. The officer then got out of the squad car and walked toward defendant's vehicle. Defendant testified that he never gave the officer permission to search his vehicle and, when the officer was three to four feet from the squad car, defendant yelled from the backseat that he did not want the officer searching his vehicle. Defendant stated that, because all the doors and windows in the squad car were closed, he believed the officer could not hear him. Defendant then told his brother, Ron, who was now standing in the parking lot, to tell the officer that he could not search defendant's vehicle. Defendant saw Ron approach and speak to the officer, and saw the officer respond. The officer motioned

for Ron to go inside the restaurant. Defendant then saw the officer proceed to search defendant's vehicle. After searching a few minutes, the officer found a pipe and held it up, showing it to defendant, then put it back down and closed the car door. Defendant testified that he was arrested for possession of drug paraphernalia, the pipe, when he arrived at the police station.

Ron Stehman testified in general accord with defendant. Ron stated that when defendant was in the squad car, he approached to hear what defendant was yelling. Defendant told Ron that the officer did not have permission to search defendant's vehicle. Ron then relayed this message to the officer, who replied: "I don't give a fuck what he has to say." At this point, the officer told Ron to get away from the squad car, and Ron went and stood on the sidewalk.

Officer Thomas Richardson, a Sandwich police officer, testified that, at around 8 p.m. on January 13, 2000, he was on duty when he received information over his mobile data terminal of an outstanding warrant for defendant's arrest. The dispatcher informed Officer Richardson of where defendant worked, the type of vehicle defendant drove and its license plate number. Officer Richardson then drove to Genoa Pizza, parked across the street and waited for defendant. Officer Richardson stated that after seeing a vehicle matching the dispatcher's description enter the restaurant's parking lot, he pulled his squad car in behind defendant while defendant was still in his vehicle. Both defendant and Officer Richardson exited their automobiles at the same time. Officer Richardson stated that he verified defendant's identity and then placed him under arrest.

Officer Richardson further testified that the only reason he approached defendant was to arrest him on the outstanding warrant for failure to appear in court. There were no other warrants and Officer Richardson

had no knowledge that defendant had committed any other offense. Officer Richardson admitted that he did not have a warrant to search defendant's vehicle and that he never asked defendant for permission to search his vehicle. Officer Richardson testified that he searched defendant's vehicle incident to defendant's arrest and also as an inventory search pursuant to the police department's tow policy. At the time Officer Richardson entered defendant's vehicle, he intended to have it towed, but later defendant convinced him to release the vehicle to his brother. No documents were produced evidencing the department's tow policy, and Officer Richardson stated that because the vehicle was not towed, his report reflected only that the vehicle was searched incident to arrest.

Officer Richardson testified that he did not see a weapon or any item of contraband in plain view from outside defendant's vehicle, and he did not discover the item of drug paraphernalia until he had entered and searched the vehicle. Officer Richardson further stated that he suspected there was something in defendant's vehicle because defendant's brother was objecting to the search so adamantly. Officer Richardson testified that he did not believe defendant could escape, as defendant was secured in the back of the squad car, but Richardson had some concern for his safety because defendant's brother was being "mouthy." Officer Richardson admitted that defendant's brother never threatened him in any way.

At the conclusion of the evidentiary hearing, the trial court first found Officer Richardson's testimony relating to a concern for his safety to be incredible, stating: "When you come here and start making up stories—well, your thought your safety and all, that is absolutely nonsense. There's nothing about this that gives any indication of any safety issues." The trial court further found incredible Officer Richardson's testimony that the

search was based on the department's tow policy, noting: "You looked in that vehicle having nothing to do with towing and you come here and you want to testify in this court that this had something to do with towing and then you say, well, I don't even know what the towing policy is." The trial court then held Officer Richardson's belief that he had the right to search incident to arrest was erroneous and that the search was invalid, reasoning as follows:

"This is a case where you didn't stop this vehicle. This vehicle was already stopped. This defendant was walking across a parking lot when you first put him under arrest. That was his testimony. That was his brother's testimony and you don't know. You do know that he was out of the car but you know this individual had nothing to do with the car at the time you arrested him on a failure to appear in court, other than he had parked his car there. *** There's nothing about a failure to appear in court that has anything to do with the car. *** I think you suspected something might be [in the car] *** but the search incidental to arrest is not a wide open situation where every time an officer makes an arrest that gives him the right to then invade other property that belongs to somebody just to see what the officer can find and that's what happened here."

Accordingly, the trial court granted defendant's motion to suppress evidence and quash arrest.

The appellate court affirmed the trial court's ruling, holding that the search of defendant's vehicle was not a search incident to arrest pursuant to either *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), or *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969). 324 Ill. App. 3d at 63-64. In a partial dissent, Justice Bowman argued that *Belton* was applicable and that the determination of whether the search was proper incident to arrest was controlled by *People v. Bosnak*, 262 Ill. App. 3d 122 (1994). 324 Ill. App. 3d at 64 (Bowman, J., concurring in part and dis-

senting in part). Justice Bowman concurred in the majority's further holding that the search of defendant's vehicle could not be justified as an inventory search incident to the vehicle being towed (324 Ill. App. 3d at 64 (Bowman, J., concurring in part and dissenting in part)), and the State does not seek review of that issue here. For the reasons that follow, we affirm the judgment of the appellate court.

Generally, a trial court's ruling on a motion to suppress evidence is subject to reversal only if manifestly erroneous. *People v. Dilworth*, 169 Ill. 2d 195, 201 (1996). This deferential standard of review applies where the suppression motion turns upon findings of fact and is grounded in the reality that the trial court is in a superior position to determine and weigh the credibility of the witnesses, observe their demeanor, and resolve conflicts in their testimony. *People v. Gonzalez*, 184 Ill. 2d 402, 412 (1998). In the case at bar, after hearing the testimony and observing the demeanor of the witnesses during the hearing on defendant's motion to suppress, the trial court determined, *inter alia*, that Officer Richardson was not a credible witness, that the officer was not in danger when the search was conducted, and that defendant had stopped his car and was walking across the parking lot when he was arrested. Upon review of the record, we agree with the appellate court that "these findings of fact were not manifestly erroneous." 324 Ill. App. 3d at 58. Accordingly, we now conduct a *de novo* review of the State's legal challenge based upon the trial court's findings of fact. See *Gonzalez*, 184 Ill. 2d at 412.

The State contends that the appellate court's holding that the search of defendant's vehicle was not a lawful search incident to arrest "is contrary to Illinois precedent and contravenes the purpose of the bright-line rule stated in *Belton*." We disagree.

Both the United States Constitution and the Illinois

Constitution protect every person from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. It is well settled that a warrantless search or seizure is *per se* unreasonable unless it comes within one of a few recognized and limited exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 29 L. Ed. 2d 564, 576, 91 S. Ct. 2022, 2032 (1971); *People v. Bailey*, 159 Ill. 2d 498, 503 (1994). One such exception, which has been found reasonable under the fourth amendment to the United States Constitution, is a search incident to a lawful arrest. *United States v. Robinson*, 414 U.S. 218, 224-26, 38 L. Ed. 2d 427, 434-36, 94 S. Ct. 467, 471-73 (1973); *Bailey*, 159 Ill. 2d at 503.

In *Chimel v. California*, 395 U.S. 752, 762-63, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040 (1969), the United States Supreme Court developed the doctrine of search incident to arrest, holding that an officer making a lawful custodial arrest may search the person of the arrestee and the area within his immediate control, into which the arrestee might reach in order to obtain a weapon or to destroy evidence. In *New York v. Belton*, 453 U.S. 454, 460, 69 L. Ed. 2d 768, 775, 101 S. Ct. 2860, 2864 (1981), the Court addressed the applicability of this doctrine to searches of automobiles, holding that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."

By applying a bright-line rule that the passenger compartment lies within the reach of the arrested occupant, *Belton* sought to avoid case-by-case evaluations of whether the arrestee's area of control within the automobile extended to the precise place where the officer found the weapon or evidence. *United States v. Fafowora*, 865 F.2d 360, 362 (D.C. Cir. 1989). Indeed, "the Court in *Belton* 'remarked upon the desirability of a

rule under which police could in most instances reach a correct determination beforehand, and the undesirability of litigation in every case over the existence of supporting reasons.' " *Bailey*, 159 Ill. 2d at 503-04, quoting *United States v. Karlin*, 852 F.2d 968, 970 (7th Cir. 1988). This court, in *Bailey*, 159 Ill. 2d at 503-05, adopted the bright-line rule of *Belton*, and the courts of this state have consistently applied this bright-line principle to analogous situations. See *People v. Gonzalez*, 316 Ill. App. 3d 354 (2000) (upholding *Belton* search of passenger compartment after defendant's car was stopped, his person searched pursuant to search warrant, and he was arrested for possession of cocaine); *People v. Allibalogun*, 312 Ill. App. 3d 515 (2000) (holding *Belton* search of vehicle justified after defendant was stopped for speeding and then arrested pursuant to an outstanding bench warrant); *People v. Tripp*, 306 Ill. App. 3d 941 (1999) (upholding *Belton* search of footlocker in passenger compartment of vehicle after defendant, who was sitting in driver's seat of car obstructing traffic, was arrested for failure to produce license and proof of insurance and police subsequently discovered handgun between the two front seats); *People v. Kalivas*, 207 Ill. App. 3d 415 (1991) (holding search of vehicle justified under *Belton* after defendant was stopped for registration violation and then arrested for driving on a revoked license).

However, the United States Supreme Court has declined to extend this bright-line rule to a situation "where the concern for officer safety is not present to the same extent and the concern for the destruction or loss of evidence is not present at all." See *Knowles v. Iowa*, 525 U.S. 113, 119, 142 L. Ed. 2d 492, 499, 119 S. Ct. 484, 488 (1998) (full search of automobile pursuant to issuance of citation for speeding violated fourth amendment). Similarly, Illinois courts have declined to uphold vehicle searches as incident to arrest where the

circumstances are not analogous to the circumstances that were the foundation of the *Belton* decision. See *People v. Wither*, 321 Ill. App. 3d 382 (2001) (although defendant was lawfully arrested after stop of his vehicle, subsequent search of vehicle exceeded scope of search permissible under *Belton*, where search was not "contemporaneous" to arrest); *People v. Trejo*, 311 Ill. App. 3d 816 (2000) (although defendant was lawfully arrested after stop of his vehicle, weapon discovered in subsequent search of vehicle's trunk was properly suppressed where search exceeded bounds of *Belton*'s bright-line rule expressly excluding trunk from scope of search).

The issue presented in the case at bar is whether *Belton*'s bright-line rule extends to a situation where the first contact the defendant has with the officer occurs after exiting the vehicle. As have courts in Florida and Michigan which examined this question, we find the following analysis of the Sixth Circuit Court of Appeals in *United States v. Hudgins*, 52 F.3d 115 (6th Cir. 1995), persuasive:

"The search of an automobile is generally reasonable even if the defendant has already been removed from the automobile to be searched and is under the control of the officer. [Citations.]

Where the officer initiates contact with the defendant, either by actually confronting the defendant or by signaling confrontation with the defendant, while the defendant is still in the automobile, and the officer subsequently arrests the defendant (regardless of whether the defendant has been removed from or has exited the automobile), a subsequent search of the automobile's passenger compartment falls within the scope of *Belton* and will be upheld as reasonable. [Citation.] Our decisions have consistently upheld the search of the passenger compartment of an automobile when the officer initiated contact with the defendant while the defendant was still within the automobile later searched, regardless of whether the defendant was arrested while actually occupying the automobile or

after having recently been removed from the automobile. [Citations.] However, where the defendant has voluntarily exited the automobile and begun walking away from the automobile *before the officer has initiated contact with him,* the case does not fit within *Belton*'s bright-line rule, and a case-by-case analysis of the reasonableness of the search under *Chimel* becomes necessary. [Citation.]" (Emphasis added.) *Hudgins,* 52 F.3d at 119.

In *Thomas v. State,* 761 So. 2d 1010, 1013-14 (Fla. 1999), the Florida Supreme Court adopted the reasoning of *Hudgins* in invalidating a search where police were outside a home making arrests for narcotics violations and the defendant pulled into the driveway of the home and exited his car. As the defendant walked to the rear of his car, the officer approached him and asked the defendant his name and whether he had a driver's license. When a check of the license revealed that the defendant had an outstanding warrant, he was arrested and a subsequent search of his car uncovered methamphetamine. The Florida Supreme Court, in limiting *Belton*'s application, stated: "While we do not question the practicality of this bright-line test, nor its application to arrests that are initiated by the conduct of an officer, we believe there must be a distinction drawn when an individual voluntarily exits his car without provocation from law enforcement personnel and without knowledge of their presence." *Thomas,* 761 So. 2d at 1011.

In the Michigan case, *People v. Fernengel,* 216 Mich. App. 420, 549 N.W.2d 361 (1996), that state's court of appeals dealt with facts which are strikingly similar to the case at bar. In *Fernengel,* police learned there was an outstanding warrant for the defendant's arrest and knew that the defendant owned a restaurant. In order to effectuate the defendant's arrest, police ordered food from the restaurant and, when the defendant stepped out of his vehicle to deliver the food and had walked 20 to 25 feet, arrested him. A gun recovered in a subsequent

search of the defendant's vehicle was used to convict him of carrying a concealed weapon and unlawful possession of a weapon by a felon. The *Fernengel* court found guidance in the *Hudgins* decision in concluding that, where the confrontation with police did not occur until defendant had voluntarily left his vehicle and was 20 to 25 feet away from it, the search was outside the scope of *Belton*. *Fernengel*, 216 Mich. App. at 423-24, 549 N.W.2d at 362-63. The court in *Fernengel* further noted:

"If the [*Belton*] rule is stretched to encompass the search of a vehicle that was voluntarily vacated by a person before confrontation with the police began, the 'bright-line' rule becomes hazy and uncertain. The police officers would be left to wonder what combination of temporal and spatial proximity the arrestee must have to the vehicle at the time contact was initiated to allow the search without a warrant." *Fernengel*, 216 Mich. App. at 425, 549 N.W.2d at 363.

Here, as in *Fernengel* and *Thomas*, defendant had voluntarily exited his car and was walking away from it when the officer initiated the contact which led to defendant's arrest. Under such circumstances, where the police first confront the arrestee outside of his vehicle, the ambiguity which *Belton* seeks to avoid no longer exists, and the rationale for its bright-line rule is absent. Rather, where searches occur beyond the scope of *Belton*'s bright-line intent, the factors in *Chimel* of officer safety and evidence preservation must be present in order for a search incident to arrest to be lawful. See *Thomas*, 761 So. 2d at 1014; *Fernengel*, 216 Mich. App. at 424, 549 N.W.2d at 363; *Hudgins*, 52 F.3d at 119. Therefore, applying *Chimel* to the facts of the case at bar, because the passenger compartment of defendant's vehicle was beyond the area within defendant's immediate control and into which defendant might have reached at the time Officer Richardson stopped and arrested him, we conclude that the search of that vehicle's passenger

compartment was not incident to defendant's arrest. See *Fafowora*, 865 F.2d at 362.

We recognize that other courts which have examined the parameters of *Belton* have defined "occupant" more broadly, allowing the search of a vehicle incident to arrest where the arrested individual was a recent occupant and the arrest was made near the vehicle, although there was no police contact prior to the arrestee exiting the vehicle. See *People v. Wanzek*, 598 N.W.2d 811, 815 (N.D. 1999) (finding search of vehicle driven by defendant who voluntarily exited auto immediately prior to her arrest was valid where defendant was standing at rear of auto at time of arrest and was arrested for traffic offenses related to her occupancy of vehicle); *United States v. Willis*, 37 F.2d 313, 317 (7th Cir. 1994) (concluding arrestee was an occupant and applying *Belton* where officer saw arrestee sitting inside an automobile and then squatting at the rear of it, and arrested him next to the vehicle); *United States v. Arango*, 879 F.2d 1501, 1506 (7th Cir. 1989) (holding driver who was detained by police while walking away from automobile, then fled, was arrested one block from vehicle, and was returned to vehicle by police, was a recent occupant under *Belton*). We therefore caution that, in adopting the rationale outlined in *Hudgins*, we do not intend that a vehicle search incident to arrest should be invalidated simply because the defendant is outside of the automobile when arrested. "The occupants of a vehicle cannot avoid the consequences of *Belton* merely by stepping outside of the vehicle as the officers approach. See *United States v. Mans*, 999 F.2d 966, 968-69 (6th Cir. 1993) (upholding *Belton* search where officer's first verbal contact with defendant was when defendant was outside the car on ground that officer had initiated contact with defendant earlier when defendant knew he was being followed by officer)." *Thomas*, 761 So. 2d at 1014. With this caveat in mind, we

find that, contrary to the contention of the State and Justice Bowman's partial dissent, the appellate court majority did not err in concluding that the case at bar is distinguishable from *People v. Bosnak*, 262 Ill. App. 3d 122 (1994).

In determining that *Bosnak* did not control the outcome of this case, the appellate court majority below summarized the facts in *Bosnak* and its reasoning as follows:

> "In *Bosnak*, the defendant drove toward two police cars that faced him and were parked along the opposite side of the street. The defendant testified that, because a trash Dumpster partially blocked his path and because the road was narrow, he passed within five feet of the police cars. The arresting officer testified that (1) the defendant's car nearly collided with his squad car, (2) he knew that the defendant's license had been suspended, and (3) he suspected that the defendant was driving under the influence of alcohol. The defendant drove 200 yards, parked 100 yards from his apartment building, and walked toward his home. After the defendant had walked approximately 10 yards, the arresting officer approached him on foot. One of the police cars was parked 15 to 20 yards from the defendant's car, but the defendant did not see that its emergency lights were activated until the officer spoke to him. [Citation.] The officer demanded the defendant's driver's license, and when he could not produce one, the defendant was placed in the police car. The defendant was arrested for driving under the influence of alcohol and for driving with a suspended license. A search of the defendant's car disclosed cannabis. [Citation.]
>
> The trial court suppressed the cannabis, concluding that the search of the car was neither a proper inventory search nor a valid search incident to arrest. We reversed, holding that '[w]here, as in the present case, *the officer pursues an automobile based upon his recent observation of the driver's actions*, and arrests the driver who has just exited the vehicle and is still within its immediate vicinity, the officer may reasonably consider the driver to be a "recent occupant" within the contemplation of *Belton*, so that a

search of the passenger compartment incident to the arrest will be authorized.' (Emphasis added.) *Bosnak*, 262 Ill. App. 3d at 128." 324 Ill. App. 3d at 62-63.

Here, in contrast to *Bosnak*, the facts show that Officer Richardson did not see defendant drive erratically or commit any traffic offense, and the State offered no evidence that the confrontation with defendant was initiated before defendant exited the vehicle or that he had exited the vehicle to avoid an encounter with the officer. Therefore, rather than the concern that the defendant would "avoid a lawful search," which arguably existed in *Bosnak*, the overriding concern under the facts presented here is that "police may create a pretext to conduct a warrantless search of a defendant's car by simply waiting for the defendant to exit his car before arresting the defendant." 324 Ill. App. 3d at 62. As the *Fernengel* court stated:

"Our decision in not intended to discourage pruden[t] [police work]. However, prudence in the manner in which defendant was arrested did not require a search of the van without a warrant. If the officers believed they had probable cause to search the van, they should have obtained a warrant ***. If they did not have probable cause, they should not be allowed to circumvent the warrant requirement by manipulating defendant into using the vehicle just before his arrest." *Fernengel*, 216 Mich. App. at 425, 549 N.W.2d at 363.

In the case at bar, it is clear that Officer Richardson created the situation that the State now argues justified the search, by using information that defendant delivered pizza in his vehicle to orchestrate his arrest at a time when he would be a "recent occupant" of the vehicle. Even those jurisdictions which have interpreted *Belton* more broadly, such as the Seventh Circuit, have declined to hold "that officers may search by artificially creating a situation to fit within an exception to the fourth amendment's warrant requirement." *Arango*, 879 F.2d at 1506. Therefore, because we agree with the appellate court

that this use of a pretext to conduct a warrantless search "is precisely the type of evil that the rote application of the bright-line rule in *Belton* may create," we decline to apply that rule here. 324 Ill. App. 3d at 62.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Appellate court judgment affirmed.*

JUSTICE THOMAS, dissenting:

I do not agree with the majority's narrow definition of "occupant," which it uses to reach the conclusion that the bright-line rule of *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), is not applicable here. The majority concludes that an arrestee is an occupant of a vehicle only when the police officer arrests or at least initiates contact with the suspect while he is still inside the automobile. To support its result, the majority relies upon the Sixth Circuit's decision in *United States v. Hudgins*, 52 F.3d 115 (6th Cir. 1995), and two out-of-state cases (*Thomas v. State*, 761 So. 2d 1010 (Fla. 1999); *People v. Fernengel*, 216 Mich. App. 420, 549 N.W.2d 361 (1996)) that have followed it. Because I believe that the rationale of those cases is unsound and because highly persuasive contrary authority exists, I respectfully dissent.

In *Belton*, the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton*, 453 U.S. at 460, 69 L. Ed. 2d at 775, 101 S. Ct. at 2864. The Court added that "police may search inside the automobile after the arrestees are no longer in it." *Belton*, 453 U.S. at 459, 69 L. Ed. 2d at 774, 101 S. Ct. at 2863; see also *People v. Bailey*, 159 Ill. 2d 498, 506 (1994) (validity of a search under *Belton* is not affected by fact that arrestee no longer has access to his vehicle when the search is conducted; this is

true even if the arrestee is handcuffed and sitting in the back of the squad car at the time of the search). The Court in *Belton* set forth a straightforward rule to facilitate guidance for police officers and to avoid hindsight determinations in litigation. *Belton*, 453 U.S. at 458-60, 69 L. Ed. 2d at 774-75, 101 S. Ct. at 1263-64. *Belton* does not add as a condition for the search that the police must initiate contact with a suspect before he exits the vehicle. The rule in *Belton* is premised upon the need to protect police officers and citizens from the actions of an arrestee or his confederate who might gain access to a weapon. *United States v. Arango*, 879 F.2d 1501, 1505 (7th Cir. 1989).

The primary safety rationale for the *Belton* rule is equally applicable whether or not the officer actually initiates contact or confronts the suspect before he exits the vehicle. The Supreme Court has repeatedly recognized that in any case involving a custodial arrest, the concern for officer safety is " ' "legitimate and weighty" ' " (*Knowles v. Iowa*, 525 U.S. 113, 117, 142 L. Ed. 2d 492, 498, 119 S. Ct. 484, 487 (1998), quoting *Maryland v. Wilson*, 519 U.S. 408, 412, 137 L. Ed. 2d 41, 46, 117 S. Ct. 882, 885 (1997), quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 110, 54 L. Ed. 2d 331, 336, 98 S. Ct. 330, 333 (1977)). In that regard, the Court has stated the following:

> "In *Robinson*, we stated that a custodial arrest involves 'danger to an officer' because of 'the extended exposure which follows the taking of a suspect into custody and transporting him to the police station.' [Citation.] We recognized that '[t]he danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty, and not from the grounds for arrest.' [Citation.]" *Knowles*, 525 U.S. at 117, 142 L. Ed. 2d at 498, 119 S. Ct. at 487-88.

Given this language of *Knowles*, the trial court's finding that there was no safety concern in this case was erroneous as a matter of law. Safety is always an attendant

concern in every custodial arrest (*Knowles*, 525 U.S. at 117, 142 L. Ed. 2d at 498, 119 S. Ct. at 487-88) and is an even greater concern when a vehicle is proximately involved.

In the present case, defendant's connection with the vehicle was proximate to the arrest. Because officer safety was as much a concern in the present case as it would be in a case with police-initiated contact while an individual is still within a vehicle, I believe that the majority's distinction is an arbitrary one. I do not believe that it can be seriously maintained that it is consistent with *Belton* to allow a search if an officer catches an arrestee before he completely extricates himself from a vehicle, but not allow the search if police apprehend him a couple seconds later. In my view, it would enhance officer safety to allow the search of the vehicle after a defendant exits without police contact to minimize the danger inherent in approaching an occupant of a vehicle. But whether the defendant exits voluntarily or involuntarily, there is always a danger to the officer associated with the subsequent arrest and the proximity of the vehicle.

Recognizing that there is no persuasive rationale for drawing a distinction between suspects that exit before police contact and those that exit after police contact, numerous courts have rejected the approach the majority now takes. See, *e.g., United States v. Sholola*, 124 F.3d 803, 817 (7th Cir. 1997) (police never saw defendant actually inside vehicle, but, because he was apprehended near the vehicle and "positively linked" to it, the search of the vehicle was considered proper under *Belton*); *United States v. Snook*, 88 F.3d 605, 608 (8th Cir. 1996) (the fact that defendant had stepped out of his vehicle before being contacted by police did not alter his status as an occupant of the vehicle under *Belton*); *Arango*, 879 F.2d at 1506-07 (defendant who was stopped by police while walking away from automobile, but who then fled, was

arrested one block away, and was then returned to area of automobile, was a recent occupant under *Belton*); *Glasco v. Commonwealth*, 257 Va. 433, 440-41, 513 S.E.2d 137, 141-42 (1999) (driver was a recent occupant within the limits of the *Belton* rule where he parked his car, crossed the street and was 30 feet from vehicle when police first initiated contact); *State v. Wanzek*, 598 N.W.2d 811, 815 (N.D. 1999) (specifically rejected the line of cases that hold an arrestee is an occupant only when arrested inside the vehicle or where police initiate contact with the arrestee before the arrestee exits the vehicle; the court instead concluded that defendant was a recent occupant under *Belton* where she exited vehicle and was first contacted by the officer at rear of car).

The majority attempts to dismiss these cases by claiming that they focused on the need to prevent suspects from avoiding lawful searches of their vehicles by rapidly exiting or moving away from the vehicles as the officers approached. First, I note that with the possible exception of *Wanzek*, there is no indication in any of the above-cited cases that the suspects were aware of a police presence before exiting their vehicles. Second, police-safety concerns, upon which the *Belton* rule is premised, exist regardless of whether a suspect knows that there is a police officer in the vicinity before exiting a vehicle.

In *Arango*, for example, police followed defendant's Jeep in an umarked police car. When the defendant and his companion parked the Jeep, police parked their unmarked car nearby. Police officers initiated contact with the defendant and his companion by asking for identification only after the two men exited the Jeep and began walking. There was no indication that the defendant knew about the police presence until after the officers identified themselves and asked for identification. *Arango*, 879 F.2d at 1503. The defendant badly injured

one of the officers before fleeing the scene. The defendant was apprehended one block from the Jeep and transported back to the area of the vehicle. In concluding that the subsequent search of the Jeep was incident to the arrest and therefore proper, the court referred to the need to protect police officers from the unpredictable actions of the arrestee or his confederate and the preference in *Belton* for avoiding hindsight determinations in litigation. *Arango*, 879 F.2d at 1505-07.

I find the Seventh's Circuit's rationale in *Arango* to be persuasive and would adopt it here. Because the possible actions of an arrestee are always considered unpredictable, the validity of the search of a vehicle is not affected by the fact that a defendant is not aware of the police before exiting or by the fact that a defendant no longer has access to a vehicle. I also note that, similar to the concern in *Arango* of a "nearby confederate," the evidence here shows that defendant's brother was nearby at the time of arrest and was of some bother to the arresting officer.

Additionally, I would infer from the Supreme Court's decision in *Michigan v. Long*, 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469 (1983), that initial contact by a police officer before an arrestee exits a vehicle would not be required by the Court to support a *Belton* search. In *Long*, the defendant swerved off the road and into a ditch. The defendant exited his vehicle and met the police officers who had stopped to investigate at the rear of his vehicle. Even though the Court upheld the officers' subsequent search of the defendant's vehicle based on the principles enunciated in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), the Court also noted that "[i]t is clear *** that if the officers had arrested Long for *** driving while intoxicated, they could have searched the passenger compartment under *New York v. Belton*." *Long*, 463 U.S. at 1035 n.1, 77 L. Ed. 2d at 1210 n.1, 103 S. Ct. at 3473 n.1.

Although I would find the search proper whether or not the police encounter was initiated prior to defendant's exit from the vehicle, I must note my disagreement with the majority's conclusion that there was "no evidence that the confrontation with defendant was initiated before defendant exited the vehicle or that he had exited the vehicle to avoid an encounter with the officer." I believe that ample circumstantial evidence was presented that defendant knew of the police presence before he exited the vehicle. Defendant admitted that he had failed to appear for his scheduled court date and that he had noticed the police squad car when he pulled into the restaurant parking lot after making his delivery. The arresting officer testified that he pulled his squad car in directly behind defendant's vehicle "in a 'T', so [defendant] couldn't get out" while defendant was still in his vehicle. Moreover, the arresting officer and defendant exited their respective vehicles at the same time. Under these facts, the rule the majority announces today can only encourage individuals to avoid lawful searches of their vehicles by rapidly exiting and moving away from the vehicle as officers approach. As the court in *Wanzek* observed, police officers should not have to race from their vehicles to the arrestee's vehicle to prevent the arrestee from getting out of the vehicle in order to conduct a valid search. *Wanzek*, 598 N.W.2d at 815.

I also disagree with the majority's assertion that the appellate court's decision in *People v. Bosnak*, 262 Ill. App. 3d 122 (1994), can be distinguished from the present case. In *Bosnak*, the defendant parked his car, exited and was 10 yards from it when first contacted by police. At that time, defendant noticed a squad car parked 15 to 20 yards from where his car was parked, and the squad car did not have its emergency lights or headlights activated. Defendant was arrested for driving with a suspended

license, handcuffed, and placed in the backseat of a squad car. The arresting officer then conducted a search of defendant's automobile and found cannabis in the glove compartment. The trial court suppressed the evidence seized as a result of the search of defendant's car. *Bosnak*, 262 Ill. App. 3d at 125.

On appeal, the appellate court found that the search of the vehicle was valid as a search incident to arrest, rejecting the defendant's claim that *Belton* did not apply because he was not an "occupant of an automobile" just prior to his arrest. *Bosnak*, 262 Ill. App. 3d at 129-30. In so doing, the *Bosnak* court expressly rejected the rule of the Sixth Circuit Court of Appeals, which the majority of this court now adopts. In that regard, the *Bosnak* court stated the following:

"If we were to adopt a contrary rule, we would be giving a driver or passenger the power to avoid an otherwise lawful search of the vehicle by quickly exiting and moving away from the vehicle before the officer has an opportunity to approach him. The undesirable consequences of such a rule are well illustrated by [*United States v. Strahan*, 984 F.2d 155 (6th Cir. 1993)]. In that case, the court noted that the officers saw the defendant park his car and quickly exit it. The officers believed that the defendant moved hurriedly because he recognized the police vehicle, which the officers had used to arrest him on a prior occasion. [Citation.] By holding that the defendant was not an occupant of a vehicle, that court allowed the defendant to prevent a search that otherwise would have been permissible under *Belton*. Although we recognize that in the present case the trial court may have concluded that defendant was unaware of the officer's presence until the officer called him, our analysis must focus upon the reasonableness of the officer's actions under the circumstances apparent to him, as opposed to defendant's state of mind.

\* \* \*

We acknowledge that there is a point at which a person who exits his vehicle can no longer be considered an 'oc-

cupant of an automobile' under *Belton*. (See *State v. Tompkins* (1988), 144 Wis. 2d 116, 123-24, 423 N.W.2d 823, 826 (*Belton* not applicable where defendant was arrested in a tavern after having exited his vehicle about 15 minutes earlier); *Gauldin v. State* (Tex. Crim. App. 1984), 683 S.W.2d 411, 414 (where defendant was approached by the police inside a tavern and led out to parking lot where he was arrested, and where defendant admitted to having driven to the bar within the hour, defendant was neither an 'occupant' nor a 'recent occupant' of his truck under *Belton*).) However, we do not perceive a distance of only 10 yards and a time span of only a few moments as barring the application of *Belton* in this case." *Bosnak*, 262 Ill. App. 3d at 129-30.

The majority claims that the case before us is distinguishable from *Bosnak* because here the arresting officer "did not see defendant driving erratically or commit any traffic offense, and the State offered no evidence that the confrontation with defendant was initiated before defendant exited the vehicle or that he had exited the vehicle to avoid an encounter with the officer." The majority's attempt to distinguish *Bosnak* on these grounds is completely without merit.

First, I note that the holding in *Bosnak* was not premised on the officer's observation of erratic driving or the commission of a traffic offense. Rather, the holding was based on the fact that the officer observed the defendant in a vehicle just prior to the arrest. *Bosnak*, 262 Ill. App. 3d at 128-29. As the court explained in distinguishing *People v. Kolody*, 200 Ill. App. 3d 130 (1990) (a case where defendant was in proximity to a vehicle but was never observed inside of it so it could not be known whether he was a recent occupant), the arresting officer in *Bosnak* observed "defendant while defendant was driving his car" and, therefore, it was clear that the defendant was an occupant of an automobile almost immediately prior to his arrest. *Bosnak*, 262 Ill. App. 3d at 129. I also note that the observation of a traf-

fic offense or erratic driving is entirely irrelevant to the analysis of determining whether a *Belton* search was proper in this case. This is because the threat to officer safety from issuing a traffic citation is "a good deal less than in the case of a custodial arrest." *Knowles*, 525 U.S. at 117, 142 L. Ed. 2d at 498, 119 S. Ct. at 487. Here, as in *Bosnak*, it was the grounds for custodial arrest coupled with the recent occupation of a vehicle that authorized the search, not an observation of erratic driving.

Second, I find puzzling the majority's attempt to distinguish *Bosnak* on the basis that here "in contrast to *Bosnak*" (203 Ill. 2d at 41) there was no evidence of a confrontation before defendant exited the vehicle or that he exited to avoid an encounter with the officer. The majority ignores that the appellate court in *Bosnak* specifically credited the defendant's testimony that the "defendant did not see the officer's emergency lights and that the officer did not make initial contact with defendant until defendant had parked his car and walked 10 yards from it." *Bosnak*, 262 Ill. App. 3d at 127. I fail to understand how the majority can assert a contrast with *Bosnak* that supports its position where Bosnak was not confronted until after he exited his vehicle. Moreover, as previously noted, *Bosnak* expressly rejected a requirement of initial contact or a consideration of a defendant's subjective state of mind. *Bosnak*, 262 Ill. App. 3d at 129. At any rate, I would submit that there is more evidence in the present case than in *Bosnak* to indicate that defendant was confronted before he exited the vehicle or that he quickly exited to avoid an encounter with police.

Finally, the majority concludes its analysis with the unsupportable allegation that Officer Richardson created a pretext to conduct the warrantless search of defendant's car by using information that defendant delivered pizza in his vehicle. Remarkably, the majority attempts to support this assertion with a citation to *Arango*, 879 F.2d at 1506.

I do not believe that there is any support in the record for the notion that the arresting officer orchestrated events to conduct a warrantless search of defendant's car. Officer Richardson testified that he first became aware that there was an outstanding warrant for defendant's arrest at 8 p.m. on the date in question via a police computer dispatch. Defendant's arrest occurred 25 minutes later at 8:25 p.m. The officer noted that the dispatcher informed him that the warrant was issued for defendant's failure to appear in court. The dispatcher also advised the officer of the make and license plate number of defendant's vehicle and that he delivered pizza for Genoa Pizza. After receiving this communication, the officer proceeded immediately to Genoa Pizza, parking his squad car across the street. When the officer saw defendant's vehicle pull into the parking lot, the officer immediately pulled in behind it to block it from leaving. The officer and defendant exited their vehicles at the same time, and defendant was just 7 to 10 feet from the vehicle when the officer was able to contact him. After confirming defendant's identity, the officer placed defendant under arrest.

Based on these facts, I am at a loss to see how the majority can conclude that the "overriding concern *** here is that 'police may create a pretext to conduct a warrantless search.'" 203 Ill. 2d at 41, quoting *Bosnak*, 324 Ill. App. 3d at 62. Instead, I can only conclude from these facts that defendant was arrested at the very first opportunity at a time when he was a recent occupant of a vehicle within the meaning of *Belton*.

*Arango*'s caution against situations where police artificially create a situation to fit within the exception to the warrant requirement (*Arango*, 879 F.2d at 1506) has no application here, and the majority's reliance on that case is misplaced. As previously discussed, *Arango* involved a defendant who was arrested one block from

his vehicle and then transported back to the area of the vehicle where a *Belton* search of the vehicle was properly conducted. *Arango*, 879 F.2d at 1506. The quotation from *Arango*, which the majority appropriates, was made in the context of cautioning against giving " 'arresting officers unlimited discretion to search any vehicle, by merely transporting the arrestee to the vehicle's location.' " *Arango*, 879 F.2d at 1506. I agree that the majority's concern about a pretextual search would be valid if Officer Richardson had suddenly arrived at Genoa Pizza while defendant was making pizzas, and then arrested him and transported him to the parking lot next to his vehicle in an attempt to support a search. Those of course are not the facts of this case.

In sum, I would uphold the validity of the search under the bright-line rule in *Belton*, authorizing the search of a vehicle incident to an arrest of its recent occupant. The cases relied upon by the majority for its rule requiring police-initiated contact with a suspect before he exits the vehicle are not well-reasoned and ignore officer-safety concerns. Instead, I would adopt the view of the Seventh Circuit in *Arango* and of our appellate court in *Bosnak*, which simply allows for a *Belton* search incident to arrest if the arrestee was a recent occupant of a vehicle arrested in close proximity to it. Additionally, I would find that even under the majority's new rule, the search was proper because the circumstantial evidence indicated that defendant was aware of the police presence before he exited the vehicle. Accordingly, I respectfully dissent.